Earl D. ROBBINS and Elsie E. Robbins, Appellants,

v.

IOWA–ILLINOIS GAS AND ELECTRIC COMPANY, an Illinois Corporation, and Metropolitan Life Insurance Company, Appellees.

No. 52842.

Supreme Court of Iowa.

Sept. 5, 1968.

John D. Randall, Cedar Rapids, for appellants.

Barnes, Wadsworth, Elderkin, Locher & Pirnie, Cedar Rapids, for appellees.

MASON, Justice.

This interlocutory appeal presents for determination correctness of trial court's ruling sustaining objections to 13 of 15 interrogatories filed by plaintiffs Earl D. and Elsie E. Robbins.

After obtaining a permit from Iowa State Commerce Commission defendant Iowa-Illinois Gas and Electric Company instituted condemnation proceedings to secure an easement for purposes of erecting an electric transmission line across plaintiffs' land in Linn County.

From the condemnation commission's award plaintiffs appealed to the district court. Section 472.18, Codes, 1962 and 1966. In preparing for trial they filed 15 interrogatories to be answered by the utility company which objected to all except No. 14.

Plaintiffs' application to this court for permission to take interlocutory appeal was granted. Rule 332, Rules of Civil Procedure.

Defendant Metropolitan Life Insurance Company, holder of a mortgage encumbering the premises, is not a party to this appeal.

I. Interrogatory 1 asks the number of appraisers employed by defendant to appraise plaintiffs' property; 2, names and addresses of those appraisers; and 3, for appraisal figures on property being condemned as made by defendant's appraisers. Interrogatories 4 and 5 seek to determine whether a report was obtained from an appraiser and if so, who signed it. Six asks the name and address of the individual connected with defendant who has possession of any written report of appraisals. Interrogatories 7 and 8 inquire whether other experts were employed and if so, their names; 9, whether experts other than appraisers have submitted written reports; 10, who signed such reports; and 11, who has possession of such reports. Twelve seeks to learn whether defendant had a file relating to the action; and 13, in whose possession the file is kept and the file's contents.

In the trial court the utility company had objected to the interrogatories as (1) a requirement it list names and addresses of witnesses it expected to call at trial, (2) an attempt to produce the work product of defendant's attorneys and the conclusions and opinions of experts and (3) an attempt to rifle defendant's files and gain privileged matters.

II. In support of their contention the court erred in sustaining objections plaintiffs assert the interrogatories do not (1) require defendant to list witnesses it expects to call at trial, (2) attempt to invade the work product of defendant's attorneys, (3) seek to produce conclusions and opinions of an expert in any way contrary to the rules of civil procedure and (4) seek privileged information.

Defendant on the other hand summarizes its objections by asserting interrogatories 1, 4 and 7 are preliminary in nature to interrogatories, 2, 5, 6 and 8 and the last four numbered interrogatories seek to require counsel for defendant to divulge information obtained in preparation for trial. That information being names and addresses of each firm which took part in appraisals, names of persons who signed the report, names of individuals who had possession thereof and names and addresses of other experts who had been consulted with respect to defendant's defense. Likewise interrogatories 9 and 12 are preliminary in nature, their sole purpose being to lay the groundwork and background for interrogatories 10, 11 and 13, the last three numbered interrogatories seek to require counsel for defendant to divulge information obtained in preparation for trial and are objectionable. Defendant contends interrogatory 15 is not concerned with discovery of any fact but is an attempt to go behind any answer to the interrogatory and inquire into deponent's credibility.

The court sustained defendant's objections without elaboration. In support of this ruling defendant contends plaintiffs' interrogatories seek information which would constitute an invasion of counsel's private files in violation of public policy underlying the orderly prosecution and defense of legal claims and production of conclusions and opinions of experts.

III. Rule 121, R.C.P., as then in force provided in part:

"A party may * * * file in duplicate not over 30 numbered interrogatories to be answered by such adversary. Interrogatories may relate to any matters which can be inquired into under rule 143 * *." The 1967 amendment is not pertinent.

The scope of material that may be inquired into by interrogatories under this rule is coextensive with and as broad as that allowed for depositions under rule 143 as amended in 1957 which we set out:

"Subject to the provisions of rule 141, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of the relevant facts; provided that a party shall not be required to list the witnesses he expects to call at the trial. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

This is basically rule 26(b), Federal Rules of Civil Procedure, with the added proviso "that a party shall not be required to list the witnesses he expects to call at the trial." Wheatley v. Heideman, 251 Iowa 695, 702, 102 N.W.2d 343, 348. Allan D. Vestal, 43 Iowa L.Rev. 8, 34.

When the Iowa Rules of Civil Procedure became effective July 4, 1943, rule 141 specifically said "there shall be no discovery". Discovery rules, Dec.1957, 7 Drake L.Rev. 3. In 1957 our Advisory Committee on Rules in making recommendations for revisions to provide broader discovery procedures, after considering the problem of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, suggested adoption of either the New Jersey provision or the Minnesota rule. The New Jersey rule would protect the attorney in the ordinary case but would allow probing of work product with court approval if the adversary can demonstrate "good cause." This was contrasted with the Minnesota rule which establishes an absolute limitation on discovery of writings which fall within language of the provision. Brown v. Saint Paul City Ry. Co., 241 Minn. 15, 35, 62 N.W.2d 688, 701, 44 A.L.R.2d 535. Note, 48 Minn.L.Rev. 977, 982–983; Note, 68 Harv.L.Rev. 673, 681.

Rule 141(a) as adopted, effective July 4, 1957, insofar as material here, provides:

"(a) The deponent shall not be required and the court shall not order a deponent or party to produce or submit for inspection any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor or agent, in anticipation of litigation or preparation for trial unless satisfied that the denial of production or inspection will result in an injustice or undue hardship; nor shall the deponent be required or the court order a deponent or party to produce or submit for inspection any part of a writing which reflects an attorney's mental impressions, conclusions, opinions or legal theories, or, except as provided in rule 133, the conclusions of an expert."

This is not a duplication of federal provisions but "adopted from the New Jersey rule and is designed to protect the work product of the attorney." Allan D. Vestal, supra, 43 Iowa L.Rev. at 33. In fact, it is similar to the amendment to rule 30(b), Federal Rules of Civil Procedure, suggested by the Federal Advisory Committee in its final draft of June 1946 but rejected by the United States Supreme Court. We set out the proposed federal amendment for comparison:

"The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or,

except as provided in Rule 35, the conclusions of an expert." Report of Proposed Amendments, June, 1946, pp. 39–40. "This language was incorporated in the New Jersey rules." Allan D. Vestal, supra, 43 Iowa L.Rev. at 17.

IV. The important question raised by defendant's contention that plaintiff's interrogatories constitute an attempt to produce work product of its attorneys and the conclusions and opinions of its experts is the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in course of preparation for possible litigation after a claim has arisen.

This issue presents problems in the important area which has come to be known as the "work product" doctrine, described as those "intangible things, the results of the lawyer's use of his tongue, his pen, and his head, for his client." Hickman v. Taylor (3 Cir.), 153 F.2d 212, 223. In general terms, this doctrine is concerned with protecting a party's trial preparations from disclosure under modern discovery procedures. Comment, The Work Product Doctrine in the State Courts, 62 Mich.L. Rev. 1199, 1200.

V. The parties agree that "in Iowa and elsewhere provisions for discovery are interpreted broadly and liberally to effect their purpose [citing authorities]. 'The modern policy * * * is that the utmost liberality should prevail in the matter of discovery, the trend being to broaden the scope of discovery so as to give litigants access to all material facts * * *.'" Wheatley v. Heideman, supra, 251 Iowa at 702, 102 N.W.2d at 348, and citations. See also Hot Spot Detector, Inc. v. Rolfes Elec. Corp., 251 Iowa 647, 651, 102 N.W. 2d 354, 359; Schaap v. Chicago and North Western Railway Co., Iowa, 155 N.W.2d 531, 533; Bengford v. Carlem Corporation, Iowa, 156 N.W.2d 855, 867; and Jones v. Iowa State Highway Commission, Iowa, 157 N.W.2d 86, 87, and citations in these opinions. "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, supra, 329 U.S. at 507, 67 S.Ct. at 392, 91 L.Ed. at 460.

Although we have adopted the policy of broad discovery there also appears to be general agreement that there is some need for the protection of a party's trial preparations. On the other hand it has been pointed out each instance in which information is protected from discovery must be recognized as a potential inroad on the policy favoring full factual discovery as an encouragement of settlements and fair trial. Comment, The Work Product Doctrine in the State Courts, 62 Mich.L.Rev., supra, at 1203.

As we determine proper scope of our discovery procedures in the work product area, under the circumstances here federal rules and federal cases do not present a helpful model which can easily be followed. The unsettled state of federal authorities is indicative of lack of consensus among judges and lawyers as to the proper balance to be struck in protecting trial preparations. 2A Barron and Holtzoff, Federal Practice and Procedure (Wright), sections 652, 652.1 and 652.2.

Rule 141(a) does not have a counterpart in the Federal Rules of Civil Procedure. State ex rel. Rich v. Bair, 83 Idaho 475, 365 P.2d 216, 218; Bender v. Eaton (Ky.), 343 S.W.2d 799, 803; and Dawson v. Lindsey (La.App.), 143 So.2d 150, 154. These jurisdictions have adopted a provision identical with or similar to that which was suggested by the Federal Advisory Committee. In Bender v. Eaton, supra, the Kentucky court, whose provision is *identical* with our rule 141(a), said:

"The restrictions of this Rule are readily apparent. There are two classes of pro-

hibited matter: (1) those writings obtained or prepared by the adverse party, his attorney, surety, indemnitor or agent in anticipation of litigation or in preparation for trial, and (2) any part of a writing which reflects the mental impressions, conclusions, opinions or legal theories of an attorney, or the conclusions of an expert.

"Only under extraordinary circumstances may the court order the production of any writing in category (1). * * *

"With respect to the writings in category (2), the prohibition is absolute and is not subject to the discretion of the trial court. [Citing authority]. If the writing constitutes the conclusion of an expert, *its production may not be ordered.*"

To state the matter differently the first clause of rule 141(a) extends a qualified immunity to "any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor or agent, in anticipation of litigation or preparation for trial." Unless the writings so obtained or prepared reflect an attorney's mental impressions, conclusions, opinions or legal theories, or, except as provided in rule 133, the conclusions of an expert, the court is given discretion in this category to permit discovery even of matters obtained in anticipation of litigation when the moving party satisfies the court "that the denial of production or inspection will result in an injustice or undue hardship." Nordeide v. Pennsylvania R. R. Co., 73 N.J.Super. 74, 179 A.2d 71, 73.

The second clause of the rule provides a substantial area of absolute protection by giving immunity to "any part of a writing which reflects an attorney's mental impressions, conclusions, opinions or legal theories or, except as provided in rule 133, the conclusions of an expert." It prohibits discovery absolutely of all such matters and to that effect is clear, positive and without exception. Mower v. McCarthy, 122 Utah 1, 245 P.2d 224, 230, applying a rule identical in substance to ours. Discretion is not involved.

In determining the extent of the qualified immunity granted in the first clause of rule 141(a) the key words are "injustice or undue hardship." Sanders v. Ayrhart, 89 Idaho 302, 404 P.2d 589, 594. "Undue hardship exists whenever a party seeking discovery cannot with due diligence, obtain the evidence from other sources and such evidence is necessary for the prosecution of that party's case." Nordeide v. Pennsylvania R. R. Co., supra, 73 N.J.Super. at 79, 179 A.2d at 74.

In Mower v. McCarthy, supra, 122 Utah at 15, 245 P.2d at 231, the court in discussing undue hardship or injustice as required by their rule stated:

"Prejudice, hardship or injustice is sufficiently shown * * * where the party seeking discovery is, with due diligence, unable to obtain evidence of some of the material facts, events, conditions and circumstances of the case which the discovery will probably reveal, and that on account of such showing such party is unable to adequately prepare the case for trial."

In Sanders v. Ayrhart, supra, the Idaho court concluded that these definitions were acceptable guidelines to determine the showing necessary under their rule. We agree.

■ Of course, relevancy to the subject matter is a basic test as to discoverability. Wheatley v. Heideman, supra, 251 Iowa at 703, 102 N.W.2d at 348, and citations.

■ VI. Defendant's appraisers for the purposes of this litigation are considered as experts within the purview of rule 141 (a). See State ex rel. Rich v. Bair, supra, 365 P.2d at 218. "Conclusion", as used in this rule, signifies a result, mental deduction, inference or opinion drawn from known subordinate or evidentiary facts. Jones v. Iowa State Highway Commission, supra, Iowa, 157 N.W.2d at 91. In this case we said " * * * property valuation deduced by an expert, based in whole or in part upon training, experience, com-

parable sales and other factual criteria, falls within the sphere of a conclusion or opinion." There we held rule 141(a) does not preclude obtaining of relevant factual information acquired and used by an adversary's expert, but it does specifically prohibit securing by discovery procedures of conclusions or personal opinions arrived at or drawn by such experts.

■ The trial court was correct in sustaining defendant's objection to interrogatory 3.

VII. We consider defendant's objections to interrogatories 1, 4, 7, 9 and 12.

Surely an answer to these interrogatories which, as previously noted, ask (1) the number of appraisers employed by defendant, (4) whether any written reports were submitted by each appraisal firm, (7) whether experts other than appraisers had been employed by defendant to advise in the defense of this action, (9) whether any written reports were submitted by these experts and (12) whether defendant had a file relating to this action, cannot reflect thought processes or legal theories of the party who has information necessary to answer them.

The questions are of a preliminary nature designed to determine whether information protected by rule 141(a) is available. The discovery sought did not involve the work product. Sanders v. Ayrhart, supra, 404 P.2d at 595; State ex rel. Pete Rhodes Supply Co. v. Crain (Mo.), 373 S.W.2d 38, 44. These interrogatories do not ask deponent or defendant to produce or submit for inspection any writing obtained or prepared for the litigant. A requirement that they be answered would not infringe on the immunity afforded by either the first or second clause of this rule.

■ The court was in error in sustaining defendant's objections to the interrogatories considered in this division.

VIII. As stated, defendant objected to interrogatories 2, 5, 6, 10 and 11 contending they require its counsel to divulge information obtained in preparation for trial, asserting that information being (2) names and addresses of each firm which took part in appraisals, (5) names of persons who signed the report, (6) names of individuals who had possession thereof, (10) name of individual who signed report of experts other than appraisers who had been consulted with reference to defense of this action and (11) name of individual who has possession of this written report.

The interrogatories here are similar to those considered in Crist v. Iowa State Highway Commission, 255 Iowa 615, 622–623, 123 N.W.2d 424, 428–429. The question as to whether defendant's objections to the taking of the interrogatories were well founded was never reached.

In the main the interrogatories do nothing but call for the names and addresses of defendant's appraisers. We have determined its appraisers for the purpose of this litigation are experts, Division VI, supra.

"The credence to be given their testimony depends to a large extent upon their qualifications. If counsel so desires, he should have an opportunity to make such investigation as he deems advisable, including learning something about them to test their credentials and to enable him to intelligently cross-examine." State By and Through Road Commission v. Petty, 17 Utah 2d 382, 412 P.2d 914, 918.

■ Defendant's objections were not well taken.

IX. Interrogatory 13 requires defendant to state where and in whose possession its file is kept and the contents thereof. That portion making inquiry as to existence, location and custody of the file is permissible under the provision of rule 143, if relevant under the test announced in Wheatley v. Heideman, supra, 251 Iowa at 703, 102 N.W.2d at 348, unless privileged.

The remaining portion presents the basic issue, can you or can you not get into the lawyer's investigation file of a case.

In October following adoption of the new discovery rules the state bar association through its Committee on Continuing Legal Education undertook the task of acquainting the bar with these new developments. A group of Iowa lawyers were selected to conduct a series of regional workshop panel discussions which are reported in 7 Drake L.Rev., supra, commencing at page 3. The chairman of the Advisory Committee stated they felt that, without ruling out the extraordinary case, they "should adopt a rule that would check and, as a matter of policy, protect the lawyer's file."

The purpose for protection accorded work product of the lawyer is to preserve our adversary system of litigation by assuring an attorney his private files shall remain free from encroachment by his adversary except in unusual circumstances where the court has been satisfied by the movant that denial will result in an injustice or undue hardship and even then, as previously noted, if the writing obtained or prepared reflects an attorney's mental impressions, conclusions, opinions or legal theories or conclusions of an expert except under rule 133.

In the panel discussions the lawyer's "work product" was referred to as "the investigation he has made, his theory about the case, his memoranda and the statements he has taken." The doctrine has also been "defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation. The lawyer's work product must have formed an essential step in the procurement of the data which the opponent seeks and he must have performed duties normally attended by attorneys.

"The work product of the lawyer * * may consist of correspondence, memoranda, reports, such as those of real estate appraisers, exhibits, trial briefs, drafts of proposed pleadings, plans for presentation of proof, statements and other matters obtained by him or at his direction in the preparation of a pending or reasonably anticipated case on behalf of a client." Riddle Spring Realty Co. v. State, 107 N.H. 271, 220 A.2d 751, 756.

The protective provisions of rule 141(a) referred to "any writing" in the first clause and to "any part of a writing" in the second clause. In Division V, supra, we have determined the second clause provides an absolute protection by giving immunity to "any part of a writing which reflects an attorney's mental impressions, conclusions, opinions or legal theories." In this connection it should be borne in mind significant portions of witnesses' statements obtained or prepared in response to attorney's interrogation, might be said to reflect the attorney's "mental impressions" or "legal theories" through the questions he asks. Insofar as defendant's file contains writings falling within category (2) of matters prohibited by this rule, its contents are immune from production or submission for inspection.

If the first clause of this rule is to be effective in providing qualified protection for "any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor or agent, in anticipation of litigation or preparation for trial", scope of the provision must be extended so as to prevent the moving party from extracting the general nature of these writings by use of interrogatories and protect against being compelled to make haec verba recitation of these writings.

Although the question does not ask that the writings prepared for the litigant constituting the file's contents be produced or submitted for inspection, we believe plaintiff's attempt to accomplish the same effect in requiring defendant to state its contents. They have sought to secure information as to the contents of defendant's file without any showing of necessity or any indication or claim that denial will

result in an injustice or undue hardship, a burden resting on them. They seek discovery as of right with only a naked, general demand for the contents of defendant's file. The first clause of the rule also precludes this attempt.

We are unable to determine from the interrogatory as framed whether plaintiffs seek to secure matters given absolute protection under category (2), matters given qualified immunity under category (1) or both.

■ The court was correct in not requiring defendant to state the file's contents in any degree whatsoever. See Sanders v. Ayrhart, supra, 404 P.2d at 594.

We are not to be understood as saying all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases.

In answer to what is stated supra in this division as to the basic issue generated by this objection, it "depends upon what the lawyer puts in them. A piece of a machine which has hurt someone, a document needed to show a fact, many things required in a lawsuit find their way from client's hands to lawyer's file and are not to be concealed until the day of trial for that reason." Hickman v. Taylor (3 Cir.), supra, 153 F.2d at 223.

For reasons stated in the next division, infra, we prefer to base our decision as to the contents of defendant's file on the protection provided under rule 141(a) as asserted by defendant rather than on the basis of other contentions urged in support of the court's ruling.

X. Defendant also asserts specific interrogatories including 13 are objectionable as they attempt to secure privileged matters and contravene public policy underlying the orderly prosecution and defense of legal claims. The privilege concept was the basis of the circuit court's holding in Hickman v. Taylor, supra, 153 F.2d 212, but rejected on certiorari by the Supreme Court, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, as a basis for decision in favor of the public policy theory of protection for the lawyer's work product.

■ The term "privileged" as it is used in rules pertaining to discovery and production of documents has the same meaning as it does in the law of evidence. As used in rule 143 the term was not designed to include anything more than that embraced within the rule of testimonial exclusion regarding privileged communications as developed under the applicable laws of evidence, both common-law and statutory. See United States v. Reynolds, 345 U.S. 1, 6, 73 S.Ct. 528, 531, 97 L.Ed. 727, 732; Timken Roller Bearing Company v. United States, D.C., 38 F.R.D. 57, 64.

" 'When upon a discovery motion a party litigant claims privilege, the burden rests on him to present facts establishing the privilege.' Whether any element of privilege might appear to exist is for this defendant to establish and, if established, it would be subject to appropriate protective order of the court." Leininger v. Swadner, Minn., 156 N.W.2d 254, 258.

■ Under the record none of defendant's claims of privilege are well taken. The court should have required defendant to answer the inquiry as to the existence, location and custody of its file.

Defendant's assertion that certain interrogatories contravene the public policy underlying orderly prosecution and defense of legal claims embraces the theory adopted by the Supreme Court in Hickman v. Taylor, supra, for protection of the lawyer's work product.

However, the work product of an attorney is clearly distinguishable from the attorney-client privilege. The two concepts often appear side-by-side in the cases since both may involve protection of trial preparations. The attorney-client privilege is, however, generally viewed as an evidentiary privilege belonging to the client and design-

ed to encourage full disclosure by him to his attorney. 8 Wigmore, Evidence, M'Naughton Revision, sections 2290–2292. On the other hand, the work product concept refers to material prepared or acquired in anticipation of litigation not necessarily privileged but immune from discovery under rule 141(a). Discovery of trial preparations which fall outside evidentiary privileges can be avoided only on the basis of protection furnished by discovery rules themselves. In support see Leininger v. Swadner, supra, 156 N.W.2d at 258–259 and Comment, The Work Product Doctrine in the State Courts, 62 Mich.L.Rev., supra, at 1200.

The limitation placed on rule 143 by the provisions of rule 141(a) does not give defendant immunity from answering as to the existence, location and custody of its file. Since the work product doctrine is not involved the public policy theory does not aid defendant here.

XI. Plaintiffs do not argue correctness of the trial court's ruling sustaining defendant's objection to interrogatory 15. We need not consider it further.

XII. In addition to those contentions asserted by defendant which we have heretofore considered, it further asserts plaintiffs' interrogatories 1 and 2 require it list names and addresses of witnesses it expected to call at trial. These interrogatories are not vulnerable to this attack. Hitchcock v. Ginsberg, 240 Iowa 678, 681, 37 N.W.2d 302, 304; Wheatley v. Heideman, supra, 251 Iowa at 702, 102 N.W.2d at 348.

XIII. Defendant's remaining contention that it is within the trial court's discretion to control, limit and even prevent discovery finds support in Cook v. Cook, 259 Iowa 825, 836, 146 N.W.2d 273, 279 and Jones v. Iowa State Highway Commission, supra, and authorities cited in these opinions. However, as pointed out in Cook, "there is a prima facie right in every case to take discovery depositions and such right should not lightly be overrid-

den." This discretion is not unlimited and should not be abused. We hold it was abused here.

For entry of an order directing defendant to answer all interrogatories as required by rule 124(b) except 3, that portion of 13 insofar as it seeks the contents of defendant's file, and 15, the cause is

Affirmed in part, reversed in part and remanded.

All Justices concur except LeGRAND, J., who concurs in the result.