**Jerry B. HALFORD, Appellant,**

v.

**David Thomas YANDELL and Van Tassel, Inc., Respondents.**

**No. 10501.**

Missouri Court of Appeals, Springfield District.

Nov. 14, 1977.

Albert C. Lowes, David G. Beeson, Buerkle, Buerkle & Lowes, Jackson, Charles C. Hatley, New Madrid, for appellant.

Donald L. Dickerson, Paul V. Gilbert, Jackson, Thomasson, Dickerson & Gilbert, Cape Girardeau, for respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

FLANIGAN, Judge.

This action arises out of a collision between two vehicles which occurred on U. S. Highway 60 in Stoddard County on August 30, 1974. One vehicle was a 1974 G.M.C. dump truck owned by plaintiff Jerry Halford and driven by his employee Dennis Laferney. The other vehicle was a White "semi-truck and trailer" owned by defendant, Van Tassel, Inc., and operated by its employee, defendant David Yandell. Each driver was acting within the course of his employment. Plaintiff's driver, Laferney, is not a party to the action.

The collision occurred when the dump truck attempted to pass the White truck as both vehicles were proceeding eastwardly. The jury returned a verdict in favor of the defendants. Plaintiff appeals.

The first of plaintiff's "points relied on" is that the trial court erred in permitting defendants' counsel, over objection, to cross-examine Laferney concerning the contents of a written statement dated September 9, 1974, which Laferney gave to David Hitt, an employee of William Dockins, a "claims adjuster"; "that said statement was privileged communication as based upon the attorney-client privilege and was thereby work product, thus neither discoverable nor admissible over objection."

The petition sought $32,875 for damages to the dump truck, loss of its use, and wrecker charges. The answer pleaded contributory negligence on the part of Laferney in failing "to sound warning of his approach" and in failing "to sound a horn before passing." Neither defendant filed a counterclaim.

In a proceeding in chambers, prior to the selection of the jury, Albert C. Lowes, plaintiff's attorney, informed the court that plaintiff had a "collision policy" on the dump truck "with our company," Western Casualty & Surety Company ("Western"), and that Western's subrogation interest in the prosecution of the action was "around $19,000."

Laferney, testifying for plaintiff, stated, on direct examination: "I believe that I blowed my horn when I started to pull out, I know I signalled to pull out, and I started passing" defendant's vehicle.

On cross-examination by defendants' attorney Donald L. Dickerson, Laferney said that he believed he sounded his horn and that his testimony, given on direct examination, to that effect meant that he "wasn't exactly sure" about it.

Mr. Dickerson then asked the witness if he had made "statements different from that before today" and the witness answered, "Yes, sir, I have." The witness admitted that on September 12, 1974, he had received a telephone call from a Mr. Ted Lepick who called him from St. Louis, asked him about the accident, and took a recorded statement from him. The witness conceded that he had seen a transcription of the recording and also admitted that he told Lepick that he did not sound a horn.

The following ensued:

"Q. (By Mr. Dickerson) Now, Mr. Laferney, as a matter of fact, sir, haven't you made other written statements to the effect, in writing, signed by you, sir, that you did not sound a horn when you passed the Yandell vehicle?

"A. I don't remember.

"Q. All right. Do you know a Mr. Bill Dockins from Cape Girardeau?

"A. No, sir, I don't.

"Q. Did you ever to your knowledge, sir, sign a statement in which you stated 'I did not sound the horn'? Now, think about it.

"MR. LOWES: Your Honor, may we approach the bench?

"THE COURT: Yes, sir.

"(The following proceedings were had in the presence but out of the hearing of the jury:)

"MR. LOWES: Judge, I don't know what is in that statement, but if Dockins took the statement then it is *work product,* and it's the rankest kind of double-dealing for him to dish out any sort of statement to the other side.

"MR. DICKERSON: Your Honor, my next purpose, I have a subpoena duces tecum for Mr. Dockins and his file. This man is not a party to this lawsuit, he in no way has anything to do with this lawsuit as parties either plaintiff or defendant—

"MR. LOWES: That isn't so.

"THE COURT: Who are you talking about?

"MR. DICKERSON: I'm talking about this witness, he's testifying as a witness in the trial of the case, and the testimony of a witness, who may have given previous statements, then there is no such thing as work product.

"THE COURT: I don't know what either of you are talking about. If this man has given a contrary statement, it is proper impeachment to show it. I don't understand your objection, Mr. Lowes.

"MR. LOWES: *The basic objection*—if I understand it, Dockins was hired on behalf of the plaintiff to go out and get statements, among other things, and apparently Don is referring to that, and if I get it right, Dockins has given him a copy of that, and *it would be work product* and it can't be used."

Attorney Dickerson then informed the court that he had subpoenaed the file of Mr. Dockins and that he wanted to "call [Dockins] forward now for the purpose of procuring what I believe to be a written statement given by this witness to him." Whereupon attorney Lowes stated that Dockins "was hired on behalf of the plaintiff to go out and make a routine investigation. He did certain things and forwarded certain statements and that is *work product. Work product cannot be used.*"

At this juncture, still outside the hearing of the jury, Dockins was called as a witness by Mr. Dickerson. Dockins testified that as a claims adjuster he investigated the accident and "through his representative David Hitt obtained a written statement from Laferney." The statement was marked Exhibit A.

On cross-examination Dockins testified that he was "employed by Halford's company" and was investigating "on behalf of Halford." Upon the completion of his investigation, "including statements," Dockins "reported to Halford's carrier." Dockins knew that litigation was likely to arise and that was one reason for the investigation. Dockins said that the day before the trial he talked with attorney Dickerson and "took the file, including the statement" to Dickerson. Dockins knew that Dickerson was representing the defendants but did not "contact anybody with Western, Halford, or any of his lawyers for permission to do that."

After Dockins was excused, the following occurred:

"MR. LOWES: Your Honor, we renew our objection, that is not discoverable and may not be legally used *because it was work product.*

"THE COURT: That objection is overruled so far as permitting him to interrogate this witness about whether he signed that statement."

The jury returned to the courtroom and Mr. Dickerson resumed cross-examination of Laferney. The witness admitted that he remembered talking to "the gentleman

from Cape who wrote out what you said to him and then asked you to sign it." Laferney was then shown Exhibit A which was dated September 6, 1974, and admitted that he remembered making such a statement. The witness then admitted that Exhibit A included this statement, "I did not honk my horn as I started to pass."

Although they are ingeniously linked in plaintiff's first point, two grounds are advanced on this appeal for convicting the trial court of error in permitting defendants' counsel to use the written statement in cross-examining Laferney. Those grounds are: (1) The written statement was a "privileged communication as based upon the attorney-client privilege," and (2) the written statement "was work product."

■ During the proceedings held out of the hearing of the jury plaintiff's counsel, Mr. Lowes, made several objections based on the ground of violation of work product. However, his objections did not include an objection to the effect that the statement was "privileged," or that it was a communication between attorney-client, or that it was a communication to an insurer by its insured or by an employee of its insured. An objector has the burden "of making the basis of his objection 'reasonably apparent' to the court." *Crabtree v. Reed*, 494 S.W.2d 42, 45[3] (Mo.1973). In plaintiff's motion for new trial the "work product" objection was renewed but again there was no reference to attorney-client privilege, or insurer-insured, or insurer-employee of insured.

"As the Court recognized in *Hickman v. Taylor*, 329 U.S. 495 at 508, 67 S.Ct. 385 at 392, 91 L.Ed. 451, the work-product doctrine is *distinct* from and broader than the attor-

ney-client privilege." (Emphasis added) *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (footnote 11).

■ Although the distinction between the work product doctrine and the attorney-client privilege has received authoritative discussion,[1] the nature of the distinction need not be explored. It is sufficient for present purposes to recognize that the distinction does exist. An objection based on the ground of violation of work product is not equivalent to an objection based on the ground of violation of the attorney-client privilege. *Daniels v. Hadley Memorial Hospital*, 68 F.R.D. 583, 586[5–7] (D.C.1975).

■ When, as here, the admissibility of evidence is attacked in the trial court on one ground only, in the absence of plain error [Rule 84.13(c)],[2] a different objection to the evidence may not be advanced on appeal. *Lee v. Rolla Speedway, Inc.*, 539 S.W.2d 627, 632[6, 7] (Mo.App.1976); *Negley B. Calvin, Inc. v. Cornet*, 427 S.W.2d 741, 746[5, 6] (Mo.App.1968). Rule 78.07; Rule 78.09. The purpose of objections to evidence is to avoid trial error and to enable the court to rule intelligently. To that end, the party objecting to the admission of evidence must state the proper ground for its exclusion. *Lewis v. Hubert*, 532 S.W.2d 860, 866[5, 6] (Mo.App.1976).

It follows that this court need not, and does not, determine whether an objection, timely made in the trial court and based upon the attorney-client privilege, would have been a valid objection to the described use of the written statement. Plaintiff has not requested such review as a matter of plain error and this court, in its discretion,

1. *State ex rel. Mueller v. Dixon*, 456 S.W.2d 594, 599 (Mo.App.1970); *Daniels v. Hadley Memorial Hospital*, 68 F.R.D. 583, 585 (1975); Wigmore on Evidence, McNaughton (Rev.) Vol. VIII, § 2318, pp. 625–628; *Scourtes v. Fred W. Albrecht Grocery Co.* (1953, D.C.Ohio) 15 F.R.D. 55; *E. I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.* (1959, D.C.Del.) 24 F.R.D. 416; *Transmirra Products Corp. v. Monsanto Chemical Co.* (1960, D.C.N.Y.) 26 F.R.D. 572; *Radiant Burners, Inc. v. American Gas Asso.* (1962, D.C.Ill.) 207 F.Supp. 771, adhered

to 209 F.Supp. 321, and rev'd on other grounds (CA7) 320 F.2d 314, 98 A.L.R.2d 228, cert. den. 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262; *Re Scranton Corp.* (1965, D.C.Pa.) 37 F.R.D. 465; *Robbins v. Iowa-Illinois Gas & Electric Co.* (1968, Iowa) 160 N.W.2d 847. 35 A.L.R.3d 412, 422 (Discovery—Attorney's "work product").

2. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969 V.A.M.S.

does not see fit to invoke Rule 84.13(c) sua sponte.

▮▮▮ This court proceeds to examine the validity of the objection which was interposed to the use of the written statement. In effect the objection was that the use of the statement in the manner described was an improper invasion of plaintiff's work product.

In support of his first point plaintiff relies primarily on *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo. banc 1976). *Cain* was a wrongful death action arising out of a highway accident which caused fatal injuries to plaintiff's decedent. Cain and his employer were two of the three defendants. Shortly after the accident Cain gave two written statements to a lay adjuster "for his insurance carrier."[3] Plaintiff, in a pretrial discovery proceeding, sought discovery of the statements. The trial court ordered production but the supreme court prohibited the enforcement of that order and held that the insurer-insured relationship, which existed between the insurance company and Cain at the time the statements were given, caused the statements to "fall within the protection of the attorney-client privilege." *Cain*, at p. 53.

The court pointed out that the language of Rule 56.01(b)(1) "authorizes discovery of matters *not privileged*. This necessarily means that privileged matters, such as communications between attorney and client, are not discoverable unless the privilege is waived by the client." (Emphasis added) *Cain*, at p. 52. The court, at p. 57, concluded that it was unnecessary for it to consider whether plaintiff "in seeking the statements made a sufficient showing of substantial need therefor and that she was unable without undue hardship to obtain the substantial equivalent as required by rule 56.01(b)(3)."

*Cain* differs from the case at bar in the following particulars: (1) *Cain* involved pretrial discovery. This case involves the use, at time of trial, of a statement produced during the trial. (2) The carrier involved in *Cain* was the liability carrier of the defendant, who was the maker of the statement, although the statement was made when he was only a prospective defendant. Here the carrier involved was the collision carrier[4] of the plaintiff and the person making the statement was not the insured of the collision carrier, although he was the employee of the insured.

Because this court holds that the differences contained in (1) are controlling here,

---

**3.** The principal opinion in *Cain* does not specifically state that the adjuster represented Cain's *liability* insurance carrier. The opinion does state, p. 51, "Insurance policies in force at the time provided liability insurance coverage" to Cain and his employer. No other type of insurance is mentioned. Judge Bardgett, in his concurring opinion, says that his concurrence is restricted "to the specific factual situation presented in this case, to-wit, an individual *insured driver* gives a statement to the adjuster for *his* own insurance company *which has the obligation to defend that insured*." (Emphasis added) It seems clear that Cain's carrier was a liability insurer. Most, if not all, of the authorities relied on in *Cain* involved liability carriers.

*Cain* cites 81 Am.Jur.2d Witnesses § 194 (actually § 193), p. 228, dealing with a report by an insured to his liability insurance company as being embraced within the attorney-client privilege. No mention is made of the relationship between an insured and his *collision* carrier. In the case at bar Western was the collision carrier of *plaintiff* but was not the collision carrier of Laferney. As defendants' excellent brief points out, it is most unlikely that plain-

tiff's liability carrier, if he had one, would have been interested in this matter because defendant Yandell was not injured (indeed was unaware of any impact between the two trucks) and the damage to the truck of the corporate defendant consisted only of a flat tire. Neither defendant counterclaimed.

Rule 56.01(b)(3), dealing with work product, includes, in the category of the "other party's representative," his "insurer" without limiting the latter to "liability insurer."

For a case involving discovery of a collision carrier's work product and containing a discussion of the "Missouri work product doctrine," see *Parrett v. Ford Motor Co.*, 47 F.R.D. 22 (D.C.1968) (Chief Judge William H. Becker).

**4.** The instant record does not show that Western was also the liability carrier of plaintiff or even that plaintiff had liability insurance. "In the trial court, as the party claiming the [attorney-client] privilege, Terrill had the burden of showing that the statement was privileged." *Hutchinson v. Steinke*, 353 S.W.2d 137, 144[7] (Mo.App.1962).

it does not consider the differences contained in (2) nor their legal significance, if any.

For the reasons which follow, this court holds that the manner in which the September 9, 1974, statement was used by defendants' counsel to impeach Laferney was not vulnerable to the objection leveled against it, that objection being founded on the work product doctrine.

Rule 56.01(b)(3) is, with a deletion not applicable here, the same as Rule 26(b)(3) of the Federal Rules of Civil Procedure. The latter rule has been referred to by a leading authority[5] as "the Work Product Rule" which creates a "qualified immunity from discovery."

Rule 56.01(b)(3) became effective on January 1, 1975, prior to the filing of the instant petition. Under Missouri discovery procedure prior to January 1, 1975, limitations on the scope of examination permitted on the taking of a deposition were contained in what was then Rule 57.01(b), "the old rule." Under the old rule the examining party could not inquire "as to the contents or substance of statements, written or oral, obtained from prospective witnesses by or on behalf of another party." The old rule also provided: "the production or inspection of any writing obtained or prepared by the adverse party or co-party, his attorney, surety, indemnitor, or agent, in anticipation of litigation or in preparation for trial (except a statement given by the interrogating party) or of any writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories . . . shall not be required." The scope of examination provided in the old rule was also applicable to other discovery devices, including interrogatories and motions to produce documents.

When the term "work product" is used by Missouri courts and lawyers it refers to the protections contained in Rule 56.01(b)(3)

and formerly contained in the old rule.[6] The objection to the use of Laferney's statement was, in essence, that such use contravened plaintiff's protections contained in Rule 56.01(b)(3) which, as stated previously, is, so far as material here, the same as Federal Rule 26(b)(3).

A recent decision of the Supreme Court of the United States, *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), contains a discussion of the work product doctrine. Although *Nobles* is a criminal case, it discusses the doctrine's use in civil as well as criminal litigation. Indeed the doctrine, said the court 422 U.S. at p. 238, 95 S.Ct. at p. 2170, "most frequently is asserted as a bar to discover (sic) in civil litigation." The court cites the landmark decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.2d 451 (1947), which was, of course, a civil case.

In *Nobles*, counsel for a criminal defendant sought to impeach the credibility of key prosecution witnesses by testimony of a defense investigator regarding statements previously obtained from the witnesses by the investigator. The district court refused to allow the investigator to testify until and unless a copy of his investigative report, inspected and edited by the court in camera so as to delete matters not relating to such statements, was submitted to the prosecution. The defense refused to produce the report and the district court thereupon excluded the investigator's testimony. The supreme court affirmed the actions of the trial judge, holding that where a party makes testimonial use of work product material, the work product doctrine is waived with respect to matters covered in the testimony.

The principal opinion, in Part IV, held that the work product doctrine "applies to criminal litigation as well as civil" but held that the defendant, "by electing to present

---

5. Federal Practice & Procedure, Wright & Miller, Vol. 8, § 2024, p. 196.

6. "The discovery here sought was not privileged; neither was it the 'work product' of plaintiff's counsel *as in Rule 57.01 defined*."

(Emphasis added) *State v. Crain*, 373 S.W.2d 38, 44[2] (Mo. banc 1963); see also *State v. McMillian*, 351 S.W.2d 22, 24 (Mo. banc 1961); 23 Am.Jur.2d 549 Depositions and Discovery § 195.

the investigator as a witness, waived the privilege with respect to matters covered in his testimony" under the circumstances there present.

The court said, at p. 238 of 422 U.S., at p. 2170 of 95 S.Ct.: "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself. Moreover, the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case. We need not, however, undertake here to delineate the scope of the doctrine at trial, for in this instance it is clear that the defense waived such right as may have existed to invoke its protections."

Beginning at p. 242 of 422 U.S., at p. 2172 of 95 S.Ct., is the concurring opinion of Mr. Justice White with whom Mr. Justice Rehnquist joined.

The following portions of the opinion of Mr. Justice White are persuasive, if not binding, and are dispositive of plaintiff's first point:

"The court appears to have held in Part IV of its opinion only that whatever protection the defense investigator's notes of his interviews with witnesses might otherwise have had, that protection would have been lost when the investigator testified about those interviews. With this I agree also. It seems to me more sensible, however, to

decide what protection these notes had in the first place before reaching the 'waiver' issue.

.    .    .    .    .

"Up until now the work-product doctrine of *Hickman v. Taylor, supra,* has been viewed almost exclusively as a limitation on the ability of a party to obtain pretrial discovery. It has not been viewed as a 'limitation on the trial court's broad discretion as to evidentiary questions at trial.' " At p. 243 of 422 U.S., at p. 2172 of 95 S.Ct.

"Since *Hickman v. Taylor, supra,* Congress, the cases, and the commentators have uniformly continued to view the 'work product' doctrine *solely as a limitation on pretrial discovery* and not as a qualified evidentiary privilege. In 1970, Congress became involved with the problem for the first time in the civil area. It did so solely by accepting a proposed amendment to Fed. Rule Civ.Proc. 26, which incorporated much of what the Court held in *Hickman v. Taylor, supra,* with respect to pretrial discovery. .   .   . (Emphasis added)

"With the exception of materials of the type discussed in Part II, *infra,*[7] research has uncovered no application of the work-product rule in the lower courts since *Hickman* to prevent production of evidence—impeaching or otherwise—at trial; and there are several examples of cases rejecting such an approach." (Citing authorities)

"Similarly, the commentators have all treated the attorney work-product rule solely as a limitation on pretrial discover[y], e. g., 4 J. Moore, Federal Practice §§ 26.63–26.64 (2d ed. 1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2026 (1970); 2A W. Barron & A. Holtzoff, Federal Practice and Procedure § 652 (Wright ed. 1961), and some have expressly stated that it does not apply to evidentiary matter. F. James, Civil Procedure 211 n. 13 (1965); 4 J. Moore, Federal Practice § 16.23[8.–4] (1963).

"in this case the creator of the memorandum was not the trial lawyer but an investigator and he was, in any event, to be called as a witness by the defense."

---

7. In Part II Mr. Justice White discussed statements "written down by the lawyer" and "the evidentiary use of lawyers' memoranda of witness interviews at trial" and pointed out that

"The reasons for largely confining the work-product rule to its role as a limitation on pretrial discovery are compelling. First of all, the injury to the fact-finding process is far greater where a rule keeps *evidence* from the factfinder than when it simply keeps advance disclosure of evidence from a party or keeps from him *leads* to evidence developed by his adversary and which he is just as well able to find by himself. In the main, where a party seeks to discover a statement made to an opposing party in order to *prepare* for trial, he can obtain the 'substantial equivalent . . . by other means,' Fed.Rule Civ.Proc. 26(b)(3), i. e., by interviewing the witness himself. *A prior inconsistent statement in the possession of his adversary, however, when sought for evidentiary purposes—i. e., to impeach the witness after he testifies—is for that purpose unique. By the same token, the danger perceived in Hickman that each party to a case will decline to prepare in the hopes of eventually using his adversary's preparation is absent when disclosure will take place only at trial. Indeed, it is very difficult to articulate a reason why statements on the same subject matter as a witness' testimony should not be turned over to an adversary after the witness has testified. The statement will either be consistent with the witness' testimony, in which case it will be useless and disclosure will be harmless; or it will be inconsistent and of unquestioned value to the jury.* Any claim that disclosure of such a statement would lead the trial into collateral and confusing issues was rejected by this Court in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and by Congress in the legislation which followed." At p. 247 of 422 U.S., at pp. 2174–2175 of 95 S.Ct. (Emphasis added)

". . . The work product rule of *Hickman v. Taylor, supra,* has no application to the request at trial for evidentiary and impeachment material made in this case." At p. 254 of 422 U.S., at p. 2178 of 95 S.Ct.

Also at p. 252 of 422 U.S. at p. 2177 of 95 S.Ct. [footnote 12] Mr. Justice White says: "The important question is not when the document in issue is created or even when it is to be produced. The important question is whether the document is sought for evidentiary or impeachment purposes or whether it is sought for preparation purposes only. Of course, a party should not be able to discover his opponent's legal memoranda or statements of witnesses not called whether his request is at trial or before trial. Insofar as such a request is made under the applicable discovery rules, it is within the rule of *Hickman v. Taylor* even though made at trial. Insofar as the request seeks to invoke the trial judge's discretion over evidentiary matters at trial, the rule of *Hickman v. Taylor* is unnecessary, since no one could ever suggest that legal memoranda or hearsay statements are evidence."

Out-state authorities are in accord with the views expressed by Mr. Justice White. *Shaw v. Wuttke*, 28 Wis.2d 448, 137 N.W.2d 649, 653[6, 7] (1965); *State v. Steinkraus*, 76 N.M. 617, 417 P.2d 431, 433[7] (1966); *Pacific N.W. Bell Tel. Co., v. Century Home Comp., Inc.*, 261 Or. 333, 491 P.2d 1023, 1026[2–4] (1971).

In *Shaw* the court said 137 N.W.2d at p. 653:

"Most of the cases have dealt with work product in relation to pretrial discovery and the policy reasons for protecting a lawyer's work product at that time are not so compelling as to require its protection at the trial. One must distinguish the case of a prior-written statement given by a witness to counsel in the course of his preparation for trial and communications given in an attorney-client relationship which privilege extends throughout the trial. Only a few cases have been found, and they are based on a more restrictive discovery statute than ours, which allow the immunity of a lawyer's work product to exist after the commencement of trial in respect to prior statements of a witness. See Anno., Discovery—Statements of Witnesses, 73 A.L. R.2d 12. We hold the immunity of the attorney's work product in respect to a written statement ceases to exist when the

person making the statement is placed on the stand as a witness at the trial. By becoming a witness the person subjects himself to the risks of impeachment and the attorney has had the benefit of his work product."

In *Steinkraus,* 417 P.2d at p. 433, the court said: "In theory, at least, the work product doctrine only bars discovery before trial."

In *Pacific N.W. Bell Tel. Co.* the court said 491 P.2d at p. 1026:

"There is an important distinction between calling for a statement at a deposition and calling for a statement at a trial during cross-examination. After an adverse witness has testified in the trial, opposing counsel, in order to effectively cross-examine, may be entitled to see and use previous statements of the witness . . whatever immunity from examination is granted to witnesses' statements upon the ground that such statements are a lawyer's work product, is not available at this stage of the proceeding."

Examination of applicable Missouri rules and statutes does not compel a contrary conclusion. Rule 56.01(b)(3) which embodies the "work product doctrine" permits only the discovery of matters "not privileged," *Cain,* supra, at p. 52. The rule gives an absolute immunity against disclosure of certain matters ("the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation"). The rule also gives a qualified (only upon a showing of "substantial need" and "undue hardship") protection from discovery of documents prepared in anticipation of litigation or for trial by or for another party or his representative.

Rule 56.01(a) reads, in pertinent part: "*Discovery methods.* Parties may obtain discovery by one or more or the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property for inspection and other purposes; physical and mental examinations; and requests for admission." It should be observed that the use during the trial of a subpoena duces tecum is not among the methods listed. That procedure is governed by statute, § 491.100 (dealing with the issuance of summonses to witnesses to attend the trial) and § 491.100. Those statutes were discussed in *State v. Scott,* 407 S.W.2d 79 (Mo.App.1966), where it was said, at p. 82, that "a litigant has a right as of course to require the attendance at the trial of those witnesses, and the production of such documents, as in his judgment are required by him to meet the issues raised in the action." The court pointed out that § 491.-090 made it a duty of the clerk of the court to issue a summons to a witness and that § 491.100 made it the duty of the clerk to issue a subpoena duces tecum, signed and sealed, but otherwise in blank, to a party requesting it.

The court further said:

"The only statutory limitation on the right of a litigant to require the production of documentary evidence at the trial is contained in the second paragraph of Section 491.100, which reads:

"Where a subpoena commands the person to whom it is directed to produce the books, papers, or documents designated therein, the court upon motion may, promptly, and in any event at or before the time specified in the subpoena for compliance therewith, quash the subpoena if it is unreasonable and oppressive or condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, or documents."

In the instant case neither plaintiff nor adjuster Dockins made a motion at any time to quash the subpoena. It seems evident that plaintiff did not know, until after Laferney had concluded his direct examination, that the subpoena had been issued and his failure to make a motion prior to that

time is understandable.[8] *Scott*, at pp. 84–85, points out that the only statutory ground for quashing the subpoena duces tecum is that it is "unreasonable and oppressive. . . . Such a ground . . is one personal to the witness, which ordinarily must be raised by him."

A recent decision of the Kansas City District of this court, *Lindberg v. Safeway Stores, Inc.*, 525 S.W.2d 571 (Mo.App.1975) merits mention. There plaintiff sued defendant for injuries sustained by plaintiff as a result of a fall in defendant's store. During the trial the circuit court, on motion of defendant, quashed a subpoena duces tecum, issued at plaintiff's instance, which sought production at trial of a written report of plaintiff's fall made by defendant's assistant manager within a few minutes after the accident.

The court said, at p. 572:

"[T]his case concerns the discoverability of a written report made by an agent to his principal on an accident which occurred on the principal's premises. This case is thus covered by the rules concerning the discoverability of work product and privileged communications. For that reason, this case is governed by *State ex rel. Terminal R. Ass'n of St. Louis v. Flynn*, 363 Mo. 1065, 257 S.W.2d 69 (banc 1953). There it was held that photographs taken immediately after an accident were protected from discovery because they were 'work product' and were privileged as coming within the purview of communications between attorney and client. In that case, the court stated at 257 S.W.2d 73 [10]: '[a] statement concerning an accident obtained by an employer from his servant for the bona fide purpose of being later transmitted to the employer's attorney for advice, or to be used by the attorney in connection with pending or threatened litigation, is privileged, because it is part of the communication from the client to his counsel.'"

The court said that the report was made by the assistant manager for the purpose of giving information to defendant to be used in case of litigation arising from plaintiff's fall and thus, under *Flynn*, "was privileged and for that reason was not subject to discovery or production on the part of the plaintiff," citing § 491.100.

Although several factual differences exist between *Lindberg* and the case at bar, it is sufficient here to point out that in *Lindberg* the assistant manager did not testify at the trial.

■ Having elicited on direct examination at the trial certain testimony from Laferney, a nonparty witness, plaintiff could not validly interpose an objection, based on the work product doctrine, to defendants' production and use, for impeachment purposes, of Laferney's prior statement inconsistent with that testimony.

Plaintiff's first point has no merit.

■ Plaintiff's second point is, in essence, that the trial court erred in permitting defendants' attorney, over plaintiff's objection, to misstate the law in his final argument. The incident complained of took place as follows:

"MR. DICKERSON: Now, ladies and gentlemen, it comes down to the fact that if you believe both of these boys were guilty of an act of negligence, if you believe both of them were, and they both contributed to this thing, then you leave their respective bosses where you found them, and that is, you simply find for the defendant, because *it's the plaintiff's duty to prove their right to recover free and clear of contributory negligence.*

"MR. LOWES: Objection, that's a gross misstatement of the law, I object to that and ask counsel be admonished. That is contrary to Your Honor's Instruction Number 2, which says they have the burden of

**8.** Rule 57.03(b)(1), dealing with a *notice* to take a *deposition*, reads in part: "If a subpoena duces tecum is to be served on the person to be examined, the designation of the materials to be produced as set forth in the subpoena shall be attached to or included in the notice." Rule 57.09(b) makes provision for the filing of a motion to quash or modify the subpoena, the motion to be made promptly or in any event at or before the time specified in the subpoena for compliance therewith.

proof that we did anything to contribute to it.

"THE COURT: The jury is instructed that you are to read the instructions of the court. The law of this case is given to you in the written instructions which you will take to the jury room."

Instruction No. 5 had submitted to the jury contributory negligence on the part of Laferney in failing to sound his horn before starting to pass defendants' truck. Instruction No. 2, based on MAI 3.01, informed the jury that the burden was upon the defendants to cause them to believe the propositions necessary to support their defense that plaintiff was contributorily negligent as submitted in Instruction No. 5.

Plaintiff asserts that the underlined portion of Mr. Dickerson's argument in effect told the jury that the burden was on plaintiff to prove there was no contributory negligence on the part of his driver. Defendants' brief concedes that such is a proper construction. Defendants say they do not contend that the statement "is a correct statement of the law." Defendants' brief further says: "Somehow the last portion of this sentence did not come out right and, standing alone in the cold gray dawn of the printed transcript, does seem to infer that plaintiff must prove freedom from contributory negligence."

It is elementary that it is highly improper for counsel, in his argument to the jury, to misstate the law. It is the function of the court, and not of counsel, to instruct the jury in writing "according to the law and the evidence in the case." Rule 70.01(a).

Cases holding that the trial court committed *reversible* error in *overruling* objections to misstatements of law made in the course of argument include: *White v. Gallion*, 532 S.W.2d 769, 771[4] (Mo.App.1975); *Penn v. Hartman*, 525 S.W.2d 773 (Mo.App.1975); *Carrel v. Wilkerson*, 507 S.W.2d 82, 85[4–6] (Mo.App.1974); *State ex rel. Kansas City Power & Light Co. v. Parma*, 467 S.W.2d 43, 46[2] (Mo.1971); *Jones v. Gooch*, 453 S.W.2d 653 (Mo.App.1970); *Butcher v. O'Connor*, 401 S.W.2d 490, 493[2] (Mo.1966); *Belding v. St. Louis Public Service Co.*, 358 Mo. 491,

215 S.W.2d 506, 513[18–20] (banc 1948); *Amsinger v. Najim*, 335 Mo. 528, 73 S.W.2d 214 (1934); *Stout v. Kansas City Public Service Co.*, 17 S.W.2d 363, 368[9] (Mo.App. 1929). In extreme instances the same result is reached even where the objection has been sustained and the jury has been instructed to disregard. *Mooney v. Terminal Railway Ass'n of St. Louis*, 352 Mo. 245, 176 S.W.2d 605, 611[15] (1944). Reversible error has also been found where the action of the trial court on the objection was something other than an express sustention or express overruling: *Wineinger v. Logan*, 496 S.W.2d 275, 277[1–2] (Mo.App.1973) (trial court made no ruling but made statement tantamount to approval of argument); *Stephens v. Henningsen, Inc.*, 358 S.W.2d 450, 453[1] (Mo.App.1962) ("a weak sustention of the objection"); *O'Donnell v. St. Louis Public Service Co.*, 246 S.W.2d 539, 544[4] (Mo. App.1952) (objections initially overruled—trial court then made inadequate attempt to correct); *Beer v. Martel*, 332 Mo. 53, 55 S.W.2d 482, 483[3–5] (1932) (objections both overruled and sustained—trial court properly granted new trial).

On the other hand, cases holding that the trial court *corrected* the error by *sustaining* objections to misstatements of law made in the course of argument include: *Furlow v. Laclede Cab Co*, 502 S.W.2d 373, 376[3–4] (Mo.App.1973) (jury also instructed to disregard); *Halley v. Schopp*, 400 S.W.2d 123, 126[1–6] (Mo.1966). In other cases no reversible error was found although the trial court made no express ruling but told the jury to follow the instructions: *Manley v. Horton*, 414 S.W.2d 254, 259[7] (Mo.1967); *Hampy v. Midwest Hanger Co.*, 355 S.W.2d 415, 420[6] (Mo.App.1962); *State v. Morant*, 271 S.W.2d 230, 232[3, 4] (Mo.App.1954); *Forsythe v. Railway Express Agency*, 125 S.W.2d 539, 542[4] (Mo.App.1939); *Best v. Liverpool & London & Globe Ins. Co.*, 49 S.W.2d 230, 232[7] (Mo.App.1932); *Helfrick v. Taylor*, 440 S.W.2d 940, 946[9–11] (Mo. 1969).

Of course none of the foregoing cases approves of the conduct of counsel in misstating the law. Such conduct must always

be condemned, whether due to inadvertence or to base motives. If the trial court overrules the objection, thereby condoning the misstatement, reversible error is almost inevitable. If the trial court sustains the objection and later overrules a motion for new trial, the appellate court rarely interferes. If, as here, the trial court does not make an express ruling on the objection at the time of the incident, the appellate result is less predictable. Manifestly no rule can fit all such incidents, each instinct with impropriety. The presence or absence of a request for mistrial is material but not always controlling. Of the 22 cases cited above, motions for mistrial were made in only 5.

In this case contributory negligence was the most hotly contested issue in the trial. Plaintiff claims and defendants concede that the statement of counsel in effect told the jury that the burden was on the plaintiff to disprove contributory negligence. That meaning is clearly a permissible construction and perhaps the only one which could be accorded the statement. Such meaning constituted a simple, pithy and devastating misstatement of law upon the most vital issue. Although plaintiff's counsel, during the course of his objection, made the remark that the statement was contrary to Instruction No. 2, the trial court did not specifically adopt that remark. The trial court did not correct the statement of defendants' counsel,[9] nor did counsel himself do so. The terse misstatement could have been tersely corrected.

Whether the incident in question, standing alone, requires reversal need not be decided because this court has concluded that it, coupled with the incident mentioned in plaintiff's third point, deprived the plaintiff of his right to a fair trial.

Plaintiff's third point attacks another portion of defense counsel's final argument. Before it is considered, a portion of the evidence must be reviewed.

During the presentation of their evidence defendants called Kenneth Campbell. He told the jury that he was an independent damage appraiser and that he inspected the plaintiff's vehicle on August 30, 1974, and made a detailed estimate of the damage to it. The reason for the making of his inspection and his relationship to the parties were not shown by the evidence. Most of Campbell's testimony came in without objection.

Outside the hearing of the jury evidence had been presented to the court, in connection with a matter not here relevant, to the effect that Campbell was hired by Western, plaintiff's collision insurer, to appraise the damage to plaintiff's truck.

During the final argument of defendants' counsel the following occurred:

"MR. DICKERSON: We called Mr. Campbell to the stand on this question or (sic) market value. Mr. Lowes is playing upon what, as he well knows I'm sure, is largely a cliche. He said a car wrecked ain't worth as much as it used to be. We're not talking about a car today. We're not talking about structural steel damage to the vehicle. We're talking about mechanical damage largely. This is a heavy piece of equipment, with functional use. It was repairable, and if repaired right there's no real diminution or decrease in the market value of the vehicle. That is not my testimony. That is not the testimony of Mr. Yandell. That is the testimony of the man who went out to the plaintiff's house on the day the accident happened and made the estimate, *and the man he finally settled it off with.* I believe that answers it.

"MR. LOWES: May we approach the Bench, Your Honor.

"THE COURT: Yes, sir.

"(The following proceedings were had in the presence but out of the hearing of the jury:)

"MR. LOWES: Your Honor, I want to move for a mistrial on that statement, 'the man he finally settled it off with.' That is bringing in exactly what we have been

---

**9.** See *Manley v. Horton,* 414 S.W.2d 254, 259 (Mo.1967) and *Helfrick v. Taylor,* 440 S.W.2d 940, 947[9] (Mo.1969).

talking about all day, that is to bring in the carrier of Mr. Halford. That statement, 'that is who he finally settled it off with,' that is completely and absolutely foreign to this and deliberately injected into this.

"THE COURT: Your motion for mistrial is denied.

"MR. LOWES: I move the jury be instructed to completely disregard that, and counsel be admonished.

"(The following proceedings were had in the presence and hearing of the jury:)

"THE COURT: Ladies and gentlemen of the jury, you are instructed that the last remark of the attorney just made is to be totally disregarded by the jury. You are further instructed there is no evidence in the record to support that statement. You may proceed."

Generally, when the insurer is not a party, it is improper to inform the jury that a plaintiff, seeking damages for his wrecked vehicle, carried collision insurance.[10] Defendants do not dispute that principle. Defendants do argue that the language "and the man he finally settled it off with" simply referred to the fact that plaintiff had induced Campbell to raise the latter's initial estimate by $2,000 and that plaintiff "agreed" to the latter figure. Defendants say, however, "the use of the word 'settling' may not have been the best choice of words under all of the circumstances." Defendants also point out that the trial court sustained the objection and directed the jury to disregard the statement although he overruled the motion for mistrial.

Jurors are intelligent people and it would require no more than average sophistication for the jury to have drawn the clear inference that plaintiff had been compensated by an insurer for his truck damage. Obviously that insurer would have been one other than defendants' liability carrier because, had it been the latter, there would have been no reason for the trial. Although, in other circumstances, the action of the trial court with respect to the second incident may have been a sufficient antiseptic, an issue which need not be decided,[11] this court concludes that the combination of the two incidents in this case, which was very close factually, requires the setting aside of the verdict. *Faught v. Washam*, 329 S.W.2d 588, 604[30] (Mo.1969); *State v. Cone*, 338 S.W.2d 22, 30[19] (Mo.1960).

The judgment is reversed and the cause remanded.

All concur.

---

10. *Sherwood v. Arndt*, 332 S.W.2d 891, 895[3] (Mo.1960); *Blanchard v. Olds Gasoline Engine Works*, 142 Mo.App. 319, 126 S.W. 828; 88 C.J.S. Trials § 53b, p. 151; 21 Appleman, Insurance Law & Practice, § 12841, p. 838. See also *Kickham v. Carter*, 335 S.W.2d 83, 89[3–5] (Mo.1960) (prejudicial error for defendant to show that plaintiff's hospital bills had been paid by Blue Cross).

11. Cases holding that error created by the injection of *liability* insurance was not cured by sustention of an objection, coupled with an instruction to disregard, include: *Boyne v. Schulte*, 222 S.W.2d 503 (Mo.App.1949); *Lind-*sey v. Rogers*, 220 S.W.2d 937 (Mo.App.1949); *Rytersky v. O'Brine*, 335 Mo. 22, 70 S.W.2d 538 (1934); *Robinson v. McVay*, 44 S.W.2d 238 (Mo.App.1931). See also *Hildreth v. Key*, 341 S.W.2d 601, 615–616 (Mo.App.1960).

"It has long been the law of this state that the improper injection in a jury-tried case that the defendant was covered by *liability* insurance constitutes error, especially so if thrown in purposefully or in bad faith. . . . But not each and every reference to insurance constitutes reversible error." *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 787 (Mo. banc 1977).