James M. KEENOY, Respondent,

v.

SEARS ROEBUCK AND CO., & Albert J. Zeis, Appellants.

No. 43002.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 5, 1982.

Motion for Rehearing and/or Transfer Denied Nov. 19, 1982.

Joel D. Monson, St. Louis, for appellants.

Thomas J. Casey, St. Louis, for respondent.

STEPHAN, Judge.

Defendants appeal from a judgment in favor of plaintiff on claims for false arrest and malicious prosecution. Judgment was entered against both defendants in the amount of $5,000 actual and $10,000 punitive damages on the false arrest count and $10,000 actual and $50,000 punitive damages on the malicious prosecution count. We affirm.

Plaintiff James Keenoy went to defendant Sears, Roebuck's Crestwood Plaza department store in St. Louis County one night in April 1978. He was accompanied by his then fiance, Cindy Gonzales. Cindy and Keenoy separated shortly after entering the store. She was shopping for a gift for her sister, and Keenoy browsed around the hardware department. He picked up, from a display, a box containing a "router," an electrical tool used in carpentry to finish beveled edges. Keenoy was a subcontractor engaged in the remodeling and renovation business. Keenoy left the hardware department carrying the boxed router under his arm. Defendant Zeis, employed by Sears as a security guard, pursued Keenoy into another department and caught up with him. Zeis was in plainclothes, and there was a dispute as to whether Zeis identified himself as a security guard and asked for a receipt for the router. A struggle ensued, involving Keenoy, Zeis, and other employees of Sears. Keenoy suffered injuries in the melee. Keenoy was handcuffed. A part-time Sears employee, Stephen Kruse, identified himself to Keenoy as a police officer. Keenoy agreed to stop struggling if the handcuffs were removed. Keenoy was taken to the store's security office, searched, questioned by the police and detained there for a period of time which may have been as much as an hour.

Keenoy sought medical attention the next evening for injuries incurred in the struggle at Sears. He missed a week of work because of his condition. On the evening of the incident, Zeis spoke to the Crestwood Police Department about Keenoy's activities in the store, and the following evening he signed a complaint against Keenoy at the Crestwood city attorney's office. On the basis of that complaint, a prosecution was initiated against Keenoy in Crestwood. Keenoy received an arrest notice and was charged with stealing under fifty dollars, tried, and acquitted. Cindy was charged by the City of Crestwood with common assault, apparently for her efforts to break up the struggle between Keenoy and Zeis. She was also tried and acquitted in municipal court.

Additional facts will be alluded to as they become necessary in the course of this opinion.

■ Appellants claim error in the refusal of the trial court to permit them to elicit testimony to the effect that at the time of the arrest in April 1978 Cindy Gonzales and the plaintiff were living together. Appellants argue that, since Cindy's testimony was in conflict with that of defendant Zeis as to the necessity for and degree of force used by Zeis in detaining Keenoy, evidence of an intimate sexual relationship between Gonzales and plaintiff Keenoy could have shown bias on the part of Gonzales and tipped the scales of credibility in favor of Zeis. In appellant's argument, the following appears: "If Mr. Keenoy's account [which was essentially corroborated by that of Gonzales] is to be believed then Mr. Zeis's behavior could be viewed as unreasonably hasty and violent and indeed of a character that might prejudice a jury against him and elicit an excessive verdict and an otherwise unwarranted award of punitive damages." We find no abuse of discretion and, therefore, no reversible error in the trial court's exclusion of evidence that Keenoy and Gonzales were living together in April of 1978.

Juries assess the credibility of witnesses. A close, personal relationship between a witness and a party could lead to biased testimony resulting from favorable emotions, McCormick on Evidence, 2nd ed. § 40 at 78. Missouri courts have approved of inquiry into, *inter alia,* friendship, affection, or sexual relations between a witness and a party for the purpose of showing partiality. *Thornton v. Vonallmon,* 456 S.W.2d 795, 798–799 [5, 6] (Mo.App.1970).

Although the trial court could limit, but not prevent entirely, inquiry into facts and circumstances tending to show bias, *Thornton,* 798, there was no such complete exclusion here. The trial court permitted testimony that the couple had been engaged for two years prior to the arrest, that Cindy had been prosecuted as a result of the incident, and that she had a civil claim similar to Keenoy's pending against Sears at the time of this trial.

Moreover, the trial court's ruling did not expressly prohibit inquiry into whether Keenoy had ever had sexual relations with Cindy. Defense counsel made no such inquiry. The record does not show whether the trial court intended to preclude such inquiry. Defense counsel ventured no attempt to clarify or plumb the depth of the trial court's prohibition. In *Thornton,* supra, the trial court refused to allow defense counsel in a civil suit to cross-examine plaintiff's witness, one Baker, regarding the nature of his relationship with plaintiff. The Springfield Court of Appeals wrote that, "the trial court should have permitted *some* inquiry into the relationship which existed between Baker and the plaintiff, (Emphasis in original), *including a reasonable inquiry into their sexual relations, if any,* although we agree that counsel should not be permitted to inquire into specific acts nor show particular instances of illicit sexual relations by the testimony of other witnesses." (Emphasis added). *Thornton,* 456 S.W.2d at 799[7].

We cannot conclude from the record that the trial court in the case at bar prevented inquiry into whether Cindy and Keenoy at one time had a sexual relationship. The admitted testimony that the couple had been engaged for two years at the time of the arrest was sufficient to alert the jury that the couple's relationship had been closer than that of mere friends. Exclusion of evidence on their living arrangements was not an abuse of the trial court's discretion.

■ Further militating against a finding of reversible error in the trial court's exclusion of evidence concerning cohabitation is the fact that both testified that their romantic relationship had terminated well before the trial. No inquiry was made into the circumstances of the breakup and a jury might infer that the couple had developed predominantly bitter feelings toward one another by the time of trial. Indeed, it is possible that the more evidence the jury saw of former intimacy, the more readily it might infer present hostility between the two, such being common human experience. Given the ambiguous nature of the results

of such romantic vicissitudes, the most significant evidence of possible bias in this case might well have been that Cindy had a claim against Sears similar to Keenoy's. This was before the jury, and any suggestion of error by the trial court concerning evidence of the romance would be nugatory.

In their second point on appeal, defendants urge that the trial court erred in refusing to allow them to call a certain Mrs. Hand as a witness. Mrs. Hand was working in the sewing machine department on the lower level of the Crestwood Sears Store at the time of the altercation involving Keenoy. In his deposition, taken almost a year before the trial, defendant Zeis referred to a woman, in the sewing machine department, whose name he did not know, who might have been present at the time of the incident. In response to plaintiff's interrogatories, which were also answered almost a year before the trial, defendant Sears listed Mrs. Hand as an employee "on duty at the time of the incident referred to in plaintiff's petition on April 11, 1978 on the Lower Level of Sears Crestwood Store." She was not, however, listed as a witness to the occurrence. Her deposition was not taken.

Defendants' counsel candidly admitted that he had not gotten around to inquiring of Sears who the lady referred to in Zeis' deposition was until a few days before the trial of this case. Defendants' counsel then contacted her and verified that she had seen the altercation. Defendants' counsel did not amend the answers to the interrogatories but communicated this information to counsel for plaintiff orally on the Friday before the Monday when the trial was to start. Immediately prior to trial, he offered to pass the case for trial for one day so that Mrs. Hand could be deposed. This solution was unsatisfactory to the trial judge, who ruled that Mrs. Hand could not be called as a defense witness.

Subsequently, during voir dire, the following exchange took place between counsel for plaintiff and a venireman:

MR. CASEY: There are other employees from Sears who are going to come in

and testify. Does anyone here have a close acquaintance or a close associate that is employed by Sears; specifically the Sears Crestwood Store?

I see Mrs. Rickhoff's hand again.

VENIREMAN RICKHOFF: I used to work with a lady that worked there part-time up in sewing.

MR. CASEY: In the Crestwood Store?

VENIREMAN RICKHOFF: Yes.

MR. CASEY: What was her name?

VENIREMAN RICKHOFF: I know her name but I can't remember it.

MR. CASEY: One name, I think, that has come out is Mrs. Hand.

VENIREMAN RICKHOFF: No.

MR. CASEY: Does that name ring a bell?

VENIREMAN RICKHOFF: No.

At the end of plaintiff's voir dire examination of the whole panel, defendants' counsel moved the court to allow him to bring Mrs. Hand in as a witness. He asked in the alternative for a mistrial. He argues that because plaintiff's counsel mentioned Mrs. Hand in front of the venire panel, the jury would draw inferences adverse to defendants if defendants failed to produce her as a witness. Plaintiff's counsel responded that he was simply trying to determine whether the venireman's acquaintance at Sears was Mrs. Hand and if there was any contact between the two. The trial court denied the defendants' motion and request for mistrial.

■ Rule 56.01(e)(1) provides in part that "[a] party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . the identity and location of persons having knowledge of discoverable matters . . . ." Mrs. Hand was previously listed as having been "on duty" on the lower level of Sears on the night of the incident. Plaintiff was not informed, until one business day before trial, that she was a witness, which would have made her a person "having knowledge of discoverable matters." Defendant does not contend, and indeed could not successfully contend, that this was seasonable notification under Rule 56.01.

Prior to the amendment of Rule 56.01, which amendment became effective January 1, 1975, there was no specific requirement that answers to interrogatories be supplemented so as to insure their continuing correctness. But even before the amendment, our Supreme Court held in *Laws v. City of Wellston,* 435 S.W.2d 370, 374 (Mo.1968), "that when the rule calls for a verified answer, it is contemplated that it is correct at the time and will continue to be correct, and that if the answer becomes incorrect by reason of subsequent information obtained, the party has an obligation to correct."

■ It may be that, in spite of the "duty" now clearly imposed upon an answering party by Rule 56.01(e)(1), failure to correct or supplement may not, in all circumstances, be fatal to the answering party's cause. This, however, is an area we need not explore for, in the instant case, counsel for plaintiff was faced with a genuine situation of eleventh hour surprise. In considering the matter, the trial court correctly stated that plaintiff's counsel had the right to know before trial "who the witnesses are going to be and what kind of case he's facing." On the other hand, the matter here did not involve a witness newly discovered by the defendants. Mrs. Hand's name was known to defendants very early in the lawsuit. Under these circumstances, the trial court was within its discretion in allowing plaintiff to proceed on schedule with the case he had prepared, this preparation having been undertaken without knowledge of Mrs. Hand's possible testimony.

■ Plaintiff's counsel mentioned Mrs. Hand's name once, during voir dire, without identifying her as a potential witness for either party. If the jury later wondered why no one named Mrs. Hand testified in the case, and we think this unlikely, they could just as well have attributed her absence to plaintiff as to defendants. Defendants argue that the jury would infer that Mrs. Hand was "a very important witness whom Sears was deliberately not pro-

ducing." The trial court, in ruling against defendants, apparently did not believe that anyone on the jury was likely to reach that conclusion. This is not a case where plaintiff's counsel commented adversely on his opponent's failure to bring in a witness. We see no prejudice to defendants, and accordingly uphold the trial court's treatment of the matter of Mrs. Hand.

■ At trial plaintiff introduced into evidence an arrest notice issued against him by the Crestwood Police Department. Defendants objected on the ground that the record was expunged under § 610.100, RSMo 1978, and therefore unavailable even to plaintiff under the holding in Bergel v. Kassebaum, 577 S.W.2d 863, 871–72 (Mo.App.1978). Defendants raise on appeal the trial court's unfavorable ruling on this issue. We find defendants' point to be devoid of merit.

Section 610.100, RSMo 1978, reads as follows:

> If any person is arrested *and not charged* with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, all records of the arrest and of any detention or confinement incident thereto shall be expunged in any city or county having a population of five hundred thousand or more. (Emphasis added).

Section 610.105 RSMo 1978, reads as follows:

> If the person arrested is charged but the case is subsequently nolle prossed, dismissed or the accused is found not guilty in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records *to all persons except the person arrested or charged.* (Emphasis added).

These two statutes are clearly related: they should be considered together and harmonized if possible. See *City of Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441, 446[7] (Mo. banc 1980). The statutes seem inconsistent, in their treatment of persons who are arrested and later acquitted.[1] Section 610.100 provides for *expungment* of records if there is no conviction after one year, suggesting that expungment may apply to someone who was arrested, charged with an offense, and acquitted. Section 610.105 provides for *closure* only in the case of someone arrested, charged, and acquitted. A sensible way to harmonize these statutes is to confine each statute to the circumstances which the drafters seemed to address in the first sentence of each. Section 610.100 applies when a "person is arrested and not charged"; § 610.105 applies when "the person arrested is charged."

Under this analysis, since plaintiff Keenoy was actually charged, § 610.100 is inapplicable. Section 610.105 provides that, since he was found not guilty, his records are closed to all but him. His use of them in this action would therefore be proper. This result would arguably conflict with the holding in *Bergel,* cited supra. *Bergel* may be distinguished, however, on the ground that there existed a court order, obtained by the defendant, directing expungment. Here, nothing in the record suggests that Keenoy's records were ever the subject of an expungment order.

We need not, however, overrule or distinguish *Bergel.* The 1981 version of § 610.-100 eliminates the ambiguity in question, so that clarification of the superseded statute would serve little purpose. Moreover, any error in the admission of the arrest notice was harmless. At trial, ample evidence was properly adduced that Keenoy had been tried and acquitted in Crestwood on the charge for which he had been arrested. Defendants did not object on the ground that these results could not be shown. Were we to hold that evidence of the arrest was erroneously admitted, the jury would still have had before it evidence of forcible ap-

---

1. The legislature eliminated this ambiguity when it removed the expungment provisions of § 610.100 in 1981. § 610.120, RSMo Supp. 1981.

prehension, temporary deprivation of liberty, trial and acquittal. The niceties of whether a technical arrest occurred are of no moment.

■ Defendant's fourth point on appeal concerns an attempt by plaintiff to illustrate for the jury the net worth of defendant Sears. Just prior to closing his case, plaintiff's attorney read to the jury defendant Sears' answer to plaintiff's interrogatory inquiring into the corporation's net worth.[2] The answer was "seven billion ninety-one million six hundred and seven thousand dollars." Plaintiff's counsel apparently wrote this figure in Arabic numerals on a blackboard in front of the jury while reading the answer aloud. Shortly thereafter, defendants asked for a mistrial on the grounds that use of the blackboard to illustrate the amount was "extremely prejudicial." The trial court refused the request. We uphold the trial court's ruling.

In *Walkley v. Sears, Roebuck & Co.*, 536 S.W.2d 169, 171[4, 5] (Mo.App.1976), this court held that "[u]se of a blackboard to illustrate matters concerning damages already in evidence is not error." That case was an action for malicious prosecution and false arrest against Sears. Plaintiff's counsel wrote figures on a blackboard to illustrate Sears' net worth to the jury. Defendants here attempt to distinguish *Walkley,* observing that the illustration in *Walkley* occurred during closing argument. In the case at bar, the conduct occurred as plaintiff was closing his case. Defendants do not tell us why the distinction would make a difference, and we see no reason why the holding in *Walkley* should not apply here. The trial court has discretion to allow such use of a visual display, and the trial court's principal concern in exercising this discretion should be whether the display will confuse or mislead the jury. *Bone v. General Motors Corporation*, 322 S.W.2d 916, 924 (Mo.1959). The display here was an accurate visual display of properly admitted evidence and amounted to little more than a witness gesturing with his hands while testifying. The jury could not have been confused or misled; and a mistrial was properly denied.

■ As their next point of error, defendants argue that the trial court should not have allowed Cindy Gonzales to testify that she was charged with, tried for, and acquitted of a crime in connection with the Keenoy incident. On cross-examination, defendants' counsel asked Cindy whether she had hired plaintiff's attorney to make a claim for her as a result of "this occurrence," i.e. the incident involving Keenoy's arrest at Sears. Cindy responded in the affirmative. Immediately thereafter, plaintiff's counsel undertook redirect examination as follows:

QUESTIONS BY MR. CASEY:

Q Cindy, in light of what Mr. Monson just brought up, were you also charged with anything as a result of this occurrence?

A Two weeks—

MR. MONSON: Well, Your Honor, I would object to this, this is not this lady's lawsuit that we're trying here today. I think it's irrelevant and immaterial.

MR. CASEY: Judge, Mr. Monson opened it up with his last question inserting my representation of Miss Gonzales in connection with this case.

THE COURT: I think so.

Q (By Mr. Casey) Were you also charged in connection with this incident?

A Yes sir.

In response to further questions, Cindy Gonzales testified that she was charged and tried for common assault in the City of Crestwood, and acquitted.

Cindy's testimony, elicited by defendants' counsel, that she had a similar claim against Sears was likely to suggest to the jury the possibility: a) that Cindy was biased against Sears; and b) that Cindy was testifying favorably for Keenoy with the expec-

---

**2.** Defendants do not challenge the relevance of this evidence; such evidence goes to the issue of punitive damages.

tation that he might testify favorably in her action. Cindy's testimony on redirect tended to explain the basis of the claim that defendants brought to the jury's attention. A witness on redirect examination may give reasons for her actions in order to refute unfavorable inferences from matters brought out on cross-examination. *Johnson v. Minihan,* 355 Mo. 1208, 200 S.W.2d 334, 336 (Mo.1947); *Baker v. Thompson-Hayward Chemical Company,* 316 S.W.2d 652, 657–658 (Mo.App.1958).

■ Defendants ask that we find the damage awards to be excessive. We do not. The evidence was such that the jury could believe that Zeis forcibly accosted the plaintiff without identifying himself and threatened to shoot him in the head. Zeis threw him to the ground twice and engaged in a wrestling match, with Zeis choking plaintiff and propelling him into various displays of merchandise. During the course of the melee, which lasted eight to ten minutes, plaintiff was kicked or punched in the face causing him to bleed. He suffered bruised ribs; and, as indicated previously, he lost a week's work because of his injuries. The incident was witnessed by twenty or more customers. Under the circumstances, we cannot say as a matter of law that the verdict for actual damages was excessive; it does not shock the conscience of this court, nor convince us that either the jury or the trial court abused their discretion. *Koehler v. Burlington Northern, Inc.,* 573 S.W.2d 938, 946 (Mo.App.1978). Similarly, we cannot agree that the punitive damages are excessive. As the term implies, such damages are intended to punish and deter future misconduct. The financial worth of the defendant is an important factor for "an amount of damages which might 'smart' one defendant might be entirely inconsequential to another." *Wisner v. S.S. Kresge Company,* 465 S.W.2d 666, 669–670 (Mo.App.1971). In view of the enormous financial resources of defendant Sears, and the manner in which the jury could find from the evidence that plaintiff was treated publicly at the hands of Sears and its agents, ". . . the punitive damages award is exceedingly small." *Boquist v. Montgom-*

*ery Ward & Co., Inc.,* 516 S.W.2d 769, 777 (Mo.App.1974). We decline to disturb the award.

Judgment affirmed.

STEWART, P.J., and LACKLAND H. BLOOM, Special Judge, concur.