**STATE of Missouri ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff-Respondent,**

**v.**

**Orville C. DOOLEY, et al., Exc. of Mini-Opry, Inc., Defendant-Appellant.**

**No. 51217.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Jan. 20, 1987.

Motion for Rehearing and/or Transfer Denied Feb. 24 and 30, 1987.
Retransferred to Court of Appeals July 14, 1987.

Application to Transfer Denied Nov. 17, 1987.

Louis J. Leonatti, Mexico, for defendant-appellant.

Dennis J. Redel, Public Counsel, Missouri Highway & Transp., Jefferson City, for plaintiff-respondent.

SIMEONE, Judge.

## I

This is an appeal in a condemnation action tried to a jury upon the exceptions of appellant—Mini-Opry, Inc. The jury assessed damages for the taking of the appellant's property in the amount of $21,300 and judgment was entered on the verdict by the Circuit Court of Monroe County. Mini-Opry appeals raising several issues for reversal. For reasons hereinafter stated, we affirm.

Mini-Opry raises a number of issues. The principal issues, as stated at oral argument are: (1) whether a loss of visibility or "view" of a potential commercial establishment resulting from a change in grade of a highway abutting appellant's land and building is a proper element of damage in a condemnation action, and (2) whether the condemnee is entitled to obtain for trial the Commission's appraiser's reports, letters, notes, memoranda or other documents prepared by the Commission's appraiser for use at trial by means of a subpoena duces tecum. There are other issues developed in the course of this opinion.

## II

These proceedings began with the filing of a "Condemnation Petition" by the Missouri Highway and Transportation Commission on May 10, 1984 to condemn 5.17 acres of land owned by the defendant, Mini-Opry, Inc. (formerly Wells-Walker, Inc.), which in turn is owned by Jim and Audrey Wells. The property is located in Monroe County and abuts Highway 24. It had a 1,396 foot frontage on the highway and is located some two miles west of the intersection of Highways 24 and 107 near Florida and Paris, Missouri. The property was condemned in order to reroute, improve and reconstruct U.S. Route 24. The entire tract consisted of 30 acres prior to the taking and 24.83 acres after the taking. The property is located near Stoutsville, east of Route 5 and on the south side of and along Highway 24. The highway improvements were for the betterment of the Clarence Cannon Dam and Mark Twain lake area.

In due time Commissioners were appointed and they awarded damages at $17,850, which was paid into the registry of the court.

On July 5, 1984, appellant filed its exceptions to the Commissioners' award and requested a jury trial.

Prior to trial, on July 11, 1984, Mini-Opry, pursuant to the discovery rules, propounded certain interrogatories to the Commission. Among such interrogatories was the question:

2. Please state the name and address of each person whom you intend or expect to call as an expert witness at the trial of this case and state the general nature of the subject matter on which the expert is expected to testify.

On December 14, 1984, the Commission answered and stated, "Unknown at this time." On September 3, 1985, the Commission supplemented its December 14 answer and named the experts it intended to call at trial: M.N. Dean, James O'Bryan, W.J.

Schneider and W.J. Van Huss. Three were to testify as to market value and one as to highway design.

In early September, 1985, the parties were notified by the Court that trial would be held on December 8 and 9, 1985. Depositions were taken of the experts in October.

On November 20, 1985, some two weeks prior to trial, the Commission filed its "Second Supplemental Answers" to defendant's interrogatory, which named the same four experts, but added the name of Ray Otto of Monroe City. The supplemental answers were marked received November 23, 1985. In addition, Mini-Opry was informed that the experts whose depositions had been taken (not Otto) had new opinions concerning the fair market value of the property condemned. On November 25, the Monday before Thanksgiving, counsel for the Commission telephoned defendant's counsel informing him of the "new" expert, Otto, and asked permission to inspect the land and building. Since counsel for Mini-Opry was in preparation for another trial, arrangements could not be made for such inspection until December 5 (Thursday), one business day before trial, for Otto to inspect the property and form an opinion as to damages. During the telephone conversation, counsel for Mini-Opry informed the counsel for the Commission that he would move to strike Otto as an expert witness. On December 3, defendant's counsel did formally move to strike Ray Otto from the list of the Commission's expert witnesses and to prohibit his testimony at trial. The motion to strike Otto was on the basis that the defendant did not find out about him until 12 business days before trial and that he did not have an opinion as to fair market value until one business day before trial. The court overruled the motion. In addition, counsel for Mini-Opry filed and served a subpoena duces tecum on Otto and the other experts, commanding them to produce for trial and in evidence "all appraisal reports, letters, notes, photographs, memos, or any other document prepared by you or used by you in evaluating" the property. The subpoena was served on November 21, and filed December 3, 1985. The Commis-

sion immediately moved to quash the subpoenas duces tecum on the ground that the subpoenas "seek discovery of facts known and opinions held by experts which were acquired or developed in anticipation of litigation or for trial and which are privileged and may only be obtained by deposition under Supreme Court Rule 56.01(b)." The Commission objected to the subpoenas on the basis that the subpoenas called for "work product" and relied on *State ex rel. Highway Commission v. Jensen*, 362 S.W.2d 568 (Mo. banc 1962).

Trial began on December 9, 1985. On the morning of trial, the court, in chambers, took up the various motions. The court (1) overruled the defendant's motion to strike Otto as a witness, (2) sustained Mini-Opry's motion in limine as to comparable sales made after the taking of depositions, and (3) overruled certain other motions.

During the voir dire examination, the Commission's counsel questioned the veniremen. He acknowledged that the Commission owes the defendant money and the question "here is how much." During his interrogation, he asked:

Q. ... Is there anyone here on this panel who believes that the State should not be allowed to even condemn property for public purposes even though it will pay fair compensation for the property? Anyone have a problem with that concept? This is what we are here for today. We want to know if it bothers anyone. As I indicated it won't be an issue today. It's been resolved. The State has that right. Is anyone bothered by that concept? ...

\* \* \* \* \* \*

Q. ... Anyone else bothered by this legal concept? You will be instructed in the law and if you have a problem with this issue, now is the time to tell us.... Is there anyone here who feels that because the State is taking this property through the power of eminent domain that it should pay a bonus for this property because it is not an open market transaction? ...

Four of the veniremen answered that they felt a bonus should be paid, but that their feeling would not affect their ability to render an impartial verdict, although one said "I don't know that it would be unfair or impartial."

The Commission challenged these four veniremen for cause. The court stated that it received the impression that the "people" thought the owner should get something over and above the legal standard (a bonus) and sustained the Commission's challenges as to these, as well as some other veniremen.

The evidence showed that the tract of land is owned by Mini-Opry, Inc. The stock is owned by Jim and Audrey Wells. They purchased the land in 1975. Mr. Wells was going to locate a country music entertainment center on the property. But the property was taken on July 11, 1984.

The Commission started the highway project in December, 1984 and was still working on it at the time of trial. Prior to the reconstruction of Highway 24, the northern boundary of the land had a five foot grade. Because of the work on the highway, the property is located some 26 feet above the highway's surface and the "entertainment" building is much more difficult to be seen from the highway. Mr. Wells' opinion of the highest and best use of his property was "commercial." His opinion as to the fair market value of the property before the taking for the land and building was $206,000. His opinion as to fair market value after the taking was $120,000, making his damages $86,000. He considered, in arriving at his opinion as to damages, the deep cut of the highway, the loss of visibility and depreciation in the value of the building and a loss of access. Although objection was made to his testimony as to loss of visibility, the court at this stage of trial overruled the objection.

Two expert witnesses testified for the appellant. Jim Dye, a real estate broker and a certified appraiser, was the first. He used the comparable sales method to appraise the property. He stated that he considered the future plans for the development of the property and used approxi-

mately 60 comparable sales but selected 13 in finally evaluating the property. His opinion was that the fair market value prior to the taking was $209,000, and was $137,000 after the taking. His total damage figure was $72,000. His opinion was that after the taking "people are not going to see the building" "because of the change in grade."

After a portion of the testimony of Jim Dye, and in chambers, the court and counsel discussed the subpoena duces tecum for Mr. Otto. Counsel for defendant sought Otto's appraisal report. Counsel contended that while an appraiser's opinion is protected by work product, "as soon as the trial starts, there is no work product." The Commission countered relying on *Jensen, supra*. In chambers the court sustained the objection of counsel for the Commission. Mr. Otto later testified for the Commission, but counsel for defendant on cross-examination did not further pursue the obtaining of Otto's report, memos or letters, for purposes of cross-examination.

The other appraiser for the defendant was Mr. Ridgely, who is an appraiser and owns his own real estate business. He believed the highway frontage was important for a commercial business due to the advertising involved. He stated that he used the comparable sales and cost depreciation methods in determining fair market value. His opinion as to the fair market value before the taking was $201,500, and after the taking, $120,240. In his opinion the damages caused by the taking was $81,260.

The Commission's only expert, Ray Otto, testified. Mr. Otto, a member of the International Association of Assessing Officers, relied upon three comparable sales, although he examined 15. He valued the entire property at $115,200 prior to the taking, and $93,920 after the taking, leaving the total damage figure at $21,300.

Due to an unfortunate series of events during the trial (ice storm, lights failed, one juror could not get to the court house even with the help of a sheriff so that the trial proceeded, by consent with 11 jurors), the

trial was moved to a motel in Paris, Missouri.

The court instructed the jury and gave a withdrawal instruction withdrawing from the jury's consideration any damages resulting from the loss of visibility of the property due to the change in the grade of Highway 24.

Closing arguments were made in the back banquet room of the motel, and the jury deliberated. Twenty minutes later, they reached a verdict and assessed damages at $21,300. This appeal followed.

## III

■ The first point raised by appellant is that the trial court erred in overruling its motion to strike Ray Otto, the respondent's expert witness, because respondent failed to "seasonably" supplement its answers to interrogatories disclosing Otto's name. On Monday, November 25, the Commission's counsel telephoned appellant's counsel and informed him that the new expert was named and asked permission to inspect the property. Counsel for appellant replied that he was going to trial and he could not make arrangements until the following Monday, December 2, 1986. Inspection took place on December 5 (Thursday), one business day before trial was to begin on the following Monday, December 9.

At the end of the first day of trial, counsel for the appellant was provided with the figures and comparable sales amounts by the Commission. Appellant complains it was error not to strike Otto as a witness because "timely" discovery of the identity of an expert witness in eminent domain proceedings "assumes great importance," and under the facts he did not have an opportunity to depose Otto, and Otto did not have an opinion as to the fair market value until December 5. "Since the landowner has only one opportunity to receive compensation for the taking of his property, he must be afforded adequate time to learn the opinion of the State appraiser and to examine the comparable sales." Since the trial court overruled the motion to strike, appellant was placed "at a severe disadvantage in the trial of their case,"

depriving appellant of "necessary and critical information." In short, says appellant, respondent abused the discovery process; and the trial court erred in denying the motion to strike.

Civil Rule 56.01(e)(1)(B) provides that a party who has responded to written interrogatories with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except that a party is under a duty "seasonably" to supplement his response with respect to any question directly addressed to "the identity of each person expected to be called as an expert witness at trial and the general nature of the subject matter on which the expert is expected to testify."

Prior to the new Rules on discovery, which became effective January 1, 1975, there was no specific requirement that answers to interrogatories be supplemented so as to insure their continuing correctness. However, our Supreme Court held in *Laws v. City of Wellston*, 435 S.W.2d 370, 374 (Mo.1968), that answers to interrogatories should be supplemented in certain instances.

In eminent domain proceedings the paramount issue, if not the only issue, concerns the amount of the condemnee's damages. *State ex rel. State Highway Commission v. Davis*, 466 S.W.2d 172, 173 (Mo.App. 1971). Hence, the "seasonable" or "timely" discovery of the identity of expert witnesses assumes great importance. In *State v. Cool's Tall Tower Rest. & Marina*, 654 S.W.2d 224 (Mo.App.1983), the Southern District affirmed a trial court's ruling refusing to permit experts to testify when the owner of the property failed to supplement answers and inform the Highway Commission of the identity of four experts until five days before trial as to two of the experts and on the morning of the trial as to the other two. The Southern District affirmed the action of the trial court on the ground that counsel had been in the case for some three years prior to trial, failed to "seasonably" inform plaintiff of the identity of the witness, and recognized the au-

thority of the trial court to impose sanctions.

In *Keenoy v. Sears Roebuck and Co.,* 642 S.W.2d 665 (Mo.App.1982), this court, in an action for damages for false arrest and malicious prosecution, affirmed the trial court's ruling refusing to allow defendants to call a certain witness who had been "on duty" in the store, but was not listed as a witness to the occurrence, and who had knowledge of "discoverable matters." In this case, plaintiff was not informed until one business day before trial that the witness, although known to defendants very early in the law suit, was not disclosed. We said that:

> It may be that, in spite of the 'duty' now clearly imposed upon an answering party by Rule 56.01(e)(1) failure to correct or supplement may not, in all circumstances, be fatal to the answering party's cause. This, however, is an area we need not explore, for in the instant case, counsel for plaintiff was faced with a genuine situation of eleventh hour surprise. *Keenoy, supra,* 642 S.W.2d at 668.

We held that the trial court did not abuse its discretion in refusing to permit the witness to the occurrence to testify.

And in *Missouri State Park Board v. McDaniel,* 473 S.W.2d 774 (Mo.App.1971), the trial court refused to permit the condemnor's witnesses to testify because their names had not been revealed to defendants as expert witnesses even though they had appraised the property some seven or eight months prior to trial. The issue decided was whether the trial court abused its discretion in refusing to permit the condemnor's expert witnesses to testify. The court held there was no abuse of discretion in refusing to permit the experts to testify. In the course of the opinion, Judge Titus, speaking for the court, outlined several guidelines concerning the actions of the

trial judge, including timeliness, prejudice, and the function of the reviewing court.

> [I]n reviewing an act performed in the exercise of judicial discretion, an appellate court is not justified in unseating the trial judge and determining the cause as it would have done had it been sitting at the trial bench. A trial court's discretion is deemed abused only when its ruling runs counter to the logic of presented circumstances and is so unreasonable and arbitrary as to shock the sense of justice and demonstrate a lack of careful consideration. *Park Board, supra,* 472 S.W.2d at 778.[1]

The exact factual situation in each case often bears little resemblance to other factual situations, so that much must be left to the sound discretion of the trial court to rule on the precise situation confronting it. The theme throughout all the decisions is that the trial court has a broad discretion to choose a course of action when evidence is challenged on the ground that it has not been disclosed by answers or supplemental answers. In its sound discretion the court may admit or reject such evidence. This court stated:

> The trial court is vested with wide discretion to administer the rules of discovery and the admission or exclusion of testimony, when such testimony is challenged on the basis that it has not been disclosed by answers to interrogatories. *Garrison v. Garrison,* 640 S.W.2d 179, 180 (Mo. App.1982).

As stated in 2A Barron & Holtzhoff (Wright Supp.) *Federal Practice and Procedure,* sec. 776, p. 44:

> It is impossible to lay down any rule as to the proper course to be followed in such circumstances, and the sound discretion of the trial court should be respected. That court will consider the explanation, if any, for failure to name the witness in the answer.... The im-

---

1. For other decisions concerning whether the trial court acted within the bounds of its authority, see *Aulgur v. Zylich,* 390 S.W.2d 553, 555 (Mo.App.1965)—excellent analysis and review list of decisions; see cases collected in Annot., 88 A.L.R.2d 657 (1963) and 1986 Supp.; *Everett v. Morrison,* 478 S.W.2d 312, 314 (Mo.1972); *Manahan v. Watson,* 655 S.W.2d 807 (Mo.App. 1983)—abuse of discretion when trial court allowed witness to testify when interrogatories were never answered so that appellant-plaintiff was misled; 8 C. Wright and A. Miller, *Federal Practice and Procedure,* §§ 2048–2050 (year).

portance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance.

Under the facts of the case at bar, we cannot say that the trial court abused its discretion in permitting Mr. Otto to testify. The trial court was in a far better position to evaluate the situation than an appellate court. *Washington Hosp. Center v. Cheeks*, 394 F.2d 964, 965 (D.C.App.1968) per Burger, J. The Plaintiff did supplement the interrogatories two weeks prior to trial, and informed counsel for appellant by telephone on November 25. The excuse by appellant's counsel that he was going to trial should not have precluded an inspection of the property until December 5. Under these particular circumstances we cannot say that the trial court erred in allowing the testimony of Mr. Otto. Because the trial court has the power to exclude testimony or impose a sanction does not mean that it is required to do so under the circumstances. 8 Wright & Miller, § 2050 (1986 Supp.).

The decisions relied upon by the appellant are not dispositive of the precise facts here. In *Cool's Tall Tower*, the party failed to supplement interrogatories only five days prior to trial as to two of the witnesses and on the morning of the trial as to the other two. *Keenoy* involved informing the adversary of a witness to the occurrence by an "eleventh hour surprise." There was no such eleventh hour surprise here.

The trial court reasonably hold that supplementing the interrogatories and informing counsel under the circumstances here satisfied the requirement of "seasonably to supplement" required by Rule 56.-01(e)(1)(B). We decline to disturb that ruling.

### IV

■ Mini-Opry's second point is that the trial court erred in "quashing" its subpoena duces tecum directed to the Commission's expert, Ray Otto, requesting his appraisal report and other documents upon which he relied to form his opinion as to the value of the condemned tract. Appellant contends that the documents were not protected by the work product privilege, and that appellant had a substantial need for the information since Otto had not formed his opinion as to value until December 5, one business day before trial.

After a portion of the testimony of appraiser, Jim Dye, the court in chambers, and counsel discussed the subpoena duces tecum. Counsel for appellant contended that, while an appraisal opinion is protected by work product, "as soon as the trial starts, there is no work product."

Appellant argues that these documents were sought to be produced at the "time of trial." But the Commission objected, relying upon *State ex rel. Highway Commission v. Jensen*, 362 S.W.2d 568 (Mo. banc 1962), and the court sustained the objection. Defendant admits it obtained Otto's valuation and comparable sales, at the end of the first day of trial, but defendant contends that this was not an adequate substitute to obtain his appraisal report or to take his deposition.

It is important to precisely delineate the issue which is involved here. First, we deal with the opinions and conclusions of an expert witness. Second, the issue involved is not one of discovery before trial. Third, the issue is not one of "work product" when the witness making the statement or report is placed on the witness stand and on cross-examination the statement or report is requested for impeachment purposes. Fourth, we do not deal with a subpoena for the production of appraiser's reports which appraise property for the jurisdictional condemnation hearing for the appointment of commissioners. The issue to be resolved is whether the "reports, letters, notes, photographs, memos or other documents" prepared by an appraiser or used in evaluating the property is subject to a subpoena duces tecum filed prior to trial for use during the trial.

The rules relating to subpoenas prior to trial are intertwined with the rules relating to discovery so far as the issue here is concerned. See Fed.R.Civ.Proc. 45 and 26; Mo.Rule 56.01 and 57.09 and 9 C. Wright &

A. Miller, *Federal Practice and Procedure*, § 2452.

Prior to the Discovery Rules, the Supreme Court dealt with the issue of obtaining appraisers' reports and memoranda. In three cases, *State v. Jensen, supra, State ex rel. Highway Commission v. Kalivas*, 484 S.W.2d 292 (Mo.1972); and *State ex rel. State Highway Commission v. Dalton*, 498 S.W.2d 801 (Mo. banc 1973), the Supreme Court had occasion to consider the discoverability of the reports, notes and memoranda of appraisers in condemnation actions for discovery purposes. In all three, the Supreme Court denied discovery.

In *Jensen*, the landowners sought to take depositions of three appraisers who had been hired by the Highway Commission and who were expected to be called as witnesses at trial. The landowners served notice to take the depositions and obtained an order of the trial court directing the appraisers to produce records pertaining to the appraisal or inspection of the property upon a subpoena duces tecum. The Supreme Court prohibited the trial court from enforcing the order. Relator's position was that the material sought was privileged because it was work product. The court ruled that the "work product" was "privileged." At that time Rule 57.01 was not the same as the present rule.

In *State ex rel. Highway Commission v. Kalivas, supra*, the landowner, in a condemnation case, hired three appraisers, but at trial used only two of them. On cross-examination of the landowner, the Commission elicited the fact that the landowner had employed appraiser number 3, and that fact was commented upon by the Commission's counsel in final argument. The Supreme Court held that appraiser number 3 was available for the Commission to call as its own witness and that "[appraisers in a condemnation action] are to be treated as any other so-called witness." 484 S.W.2d at 295. But the court stated:

> However, we do not depart from our ruling in *Jensen, supra*, that prior to trial, the opinion of an appraiser as to damages in a condemnation suit is to be

considered work product and not subject to discovery. 484 S.W.2d at 295.

In *Dalton*, an order of condemnation was entered at the initial hearing. Later, the trial court entered an order upon a subpoena duces tecum that the Commission's expert witnesses "divulge their conclusions as reflected in appraisal reports which they prepared at the request of and for [the Commission.]" Again, the Supreme Court held that the conclusions of expert witnesses in a condemnation action as reflected in their appraisal reports prepared at the request of the condemnor were not subject to discovery. The trial court based its ruling in part on its finding that "the trial of this cause" had "begun and [was] in progress for the purpose of these rulings." But the court rejected this theory and held that the rules do not permit obtaining the conclusions of the expert.

Hence, the Supreme Court in *Jensen*, held that the appraisers' reports and memoranda was work product and was privileged as having been prepared in anticipation of litigation. In *Dalton*, the Supreme Court held that the reports were not discoverable for the additional reason that they constituted the conclusions of an expert.

Now, the question is whether these principles and holdings have been modified by the new Rules adopted in 1975. Rule 56.-01(b)(4) deals with "discovery of facts known and opinions held by experts." This rule is subject to the limitation contained in Rule 56.01(b)(1) that the matter be "not privileged." Rule 56.01(b)(4) provides that "discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this Rule and acquired or developed in anticipation of litigation or for trial, may be obtained *only* ..." by deposition.

Rule 56.01(b)(3) begins by stating that "[s]ubject to the provisions of subdivision (b)(4) of this Rule, a party may obtain discovery ..." Hence, if the matter sought to be discovered constitutes "facts known and opinions held by experts" under Rule 56.01(b)(4), Rule 56.01(b)(3)—showing of substantial need and unable without undue hardship to obtain equivalent—does not

even come into play and the exclusive methods of discovery are limited to Rule 56.01(b)(4). These methods are limited to interrogatories and depositions. They do not include the issuance of a subpoena.

Although it is true that "work product" has been abrogated by the new rules, and material may be obtained upon a showing that the party seeking materials has "substantial need" and is "unable without undue hardship to obtain the substantial equivalent" by other means, see *Porter v. Gottschall*, 615 S.W.2d 63, 65–66 (Mo. banc 1981), yet these rules, especially Rule 56.-01(b)(4)(b)—relating to the facts and opinions of experts, did not change the status of appraisers' reports and the exclusive method of obtaining same.

The question then arises whether the defendant is entitled to the appraiser's reports for trial and whether the "work product" doctrine applies at the trial stage. This issue has been discussed in *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) and *Halford v. Yandell*, 558 S.W.2d 400 (Mo.App.1977). In *Nobles*, the Supreme Court of the United States recognized that the work product doctrine has been viewed almost exclusively as a limitation on the ability of a party to obtain pretrial discovery. Although *Nobles* was a criminal case, it discusses the doctrine's use in civil as well as criminal litigation. The Supreme Court held that where a party makes use of work product material, the work product doctrine is waived with respect to matters covered in testimony. The work product doctrine does not limit the power of the trial court to order production of statements of witnesses who "have testified at trial."

Similarly, *Halford v. Yandell*, 558 S.W.2d 400, 401 (Mo.App.1977), upon which appellant relies, makes the same conclusions. In *Halford*, a collision occurred between two vehicles. One vehicle was owned by plaintiff, Halford, and operated by his employee Laferny. The other vehicle was owned by a company and operated by its employee Yandell. Laferny, prior to litigation, gave a statement to a "claims adjuster." Laferny testified and on cross-examination, defense counsel asked the witness if he had given statements "different from that before today." Defense counsel sought by subpoena to obtain the statement Laferny gave to the claims adjuster, and plaintiff's counsel objected on the ground that the claims adjuster was hired on behalf of plaintiff and that the statement was "work product." The adjuster was employed by Halford's insurance company and was investigating on behalf of Halford's company. The trial court overruled an objection to the use of the statement because it was work product. The court overruled the objection. The Court of Appeals, Southern District, held this not to be error. The court recognized a distinction between "privilege" and "work product." The Southern District differentiated between pretrial discovery and the use, at the time of trial, of a document produced during the trial, 558 S.W.2d at 405, and held that the manner in which the statement was used by defense counsel to impeach Laferny, the witness, was not "vulnerable to the objection leveled against it, that objection being founded on the work product doctrine." 558 S.W.2d at 406." The court recognized the important distinction between calling for a statement at a deposition and calling for a statement at trial during cross-examination, and held that after a witness has testified at trial, the immunity of work product in respect to a statement ceases to exist. During cross-examination, opposing counsel may be entitled to see and use previous statements regardless of the "work product" doctrine. In such an instance "work product" ceases to exist. "Having elicited on direct examination at the time certain testimony from Laferny, a non party witness, plaintiff could not validly interpose an objection, based on the work product doctrine, to defendant's production and use, for impeachment purposes, of Laferny's prior statement inconsistent with that testimony." 558 S.W.2d at 410. The court also stated:

We hold the immunity of the attorney's work product in respect to a written statement ceases to exist when the person making the statement is placed on

the stand as a witness at the trial. 558 S.W.2d at 408–409.

Therefore, under these decisions, there is a distinction between material sought for purposes of discovery and the use of such material in the discretion of the trial court after a witness has testified. The work product doctrine is not applicable once the witness testifies and the adverse party on cross-examination seeks the statements, reports or other matters from the witness for purpose of cross-examination or impeachment. These cases apply the *Jencks* rule [2] to civil trials.

In the context of this case, counsel for appellant served the subpoena on Otto prior to trial and during the trial discussed it somewhat briefly in chambers after a portion of Dye's testimony. Although counsel sought Otto's report for use at trial, counsel did not make any reference to or attempt to use the report for purposes of and on cross-examination of Otto after Otto's direct testimony. Under these circumstances, we cannot say the trial court was in violation of *Halford* and *Nobles, supra,* and therefore erred.

The recent decision of the Supreme Court, *State ex rel. Missouri Highway and Transportation Commission v. Anderson,* 735 S.W.2d 350 (Mo. banc 1987), does not precisely control the issue here, but its import reinforces our conclusion. In *Anderson,* the Supreme Court held that, at the jurisdictional phase of the condemnation proceeding, the landowner is not entitled, under the modern discovery rules, to have issued subpoenas duces tecum to the Commission appraisers to produce their notes, memoranda, summaries or written documents which they had used in making their pre-condemnation appraisals. The court held that if the appraisers were experts, Rule 56.01(b)(3) does not come into play and if they were not, their memoranda and notes are protected. The exclusive means of discovery is pursuant to Rule 56.01(b)(4). *Anderson* confirms our conclusion.

We therefore hold that under the circumstances of this case the trial court did not err in "quashing" the subpoena duces tecum seeking "all appraisal reports, letters, notes, photographs, memos ... prepared ... in valuating" the property.

## V

■ In its next point, Mini-Opry complains that the trial court erred when it struck four of the jurors for cause, because they felt that when a person's property is taken upon eminent domain, the person should be entitled to a bonus. The trial court did not err, and we reject this contention of the appellants.

There are certain "core" principles applicable to this issue. It is fundamental that jurors should be thoroughly impartial. The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury guaranteed by the Constitution. *Kendall v. Prudential Insurance Co. of America,* 327 S.W.2d 174, 177 (Mo. banc 1959). This principle is a part of our constitutional system and an integral part of the adversary system. It is fundamental in our jury system. *Hill v. Boling,* 523 S.W.2d 867, 873 (Mo.App.1975); *Barnes v. Marshall,* 467 S.W.2d 70, 76 (Mo.1970). In order to obtain unbiased and unprejudiced jurors, the parties are allowed latitude in examining prospective jurors on voir dire. *Hill,* 523 S.W.2d at 873.

Our statutes, sections 494.190 and 492.200, R.S.Mo.1978, set forth certain grounds for disqualification, including forming or expressing an opinion concerning the matter, or of a person who is "kin" to either party. But these grounds of disqualification are not exclusive. *Kendall,* 327 S.W.2d at 177. It is clear that the state of mind of a particular juror evincing bias to either party is a ground for challenge. "If for any reason, whether statutory or not, a prospective juror is not in a position to enter the jury box with an open mind, free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence advanced

---

**2.** *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); 18 U.S.C.A. § 3500

—"until witness has testified at trial"; McCormick, *Evidence,* § 97 (3rd ed. p. 238).

and the law as contained in the court's instructions, he is not a competent juror." *Murphy v. Cole*, 338 Mo. 13, 88 S.W.2d 1023, 1024, 103 A.L.R. 505 (1935); *Kendall, supra*, 327 S.W.2d at 177.

Because of the myriad of factual situations, each case must be determined upon its own facts. Of necessity, a trial court is vested with broad discretion in controlling the voir dire examination, and its rulings on challenges, and the rulings will not be disturbed on appeal unless they clearly and manifestly indicate an abuse of discretion. *Hill*, 523 S.W.2d at 873. "In determining qualifications of prospective jurors, the trial court has very wide discretion and its ruling will not be disturbed on appeal unless there has been a clear abuse of discretion." *State v. Betts*, 646 S.W.2d 94, 98 (Mo. banc 1983); *State v. Beal*, 602 S.W.2d 22, 24 (Mo.App.1980)—no error when court did not sua sponte reject juror who didn't want responsibility of affecting someone's life but who stated she would be impartial and follow law; *State v. Holland*, 719 S.W.2d 453 (1986); *State v. Johnson*, 722 S.W.2d 62 (Mo. banc 1986).

In recent decisions, our Supreme Court has indicated that a trial judge should be "liberal" in sustaining challenges for cause. Judge Blackmar recently expressed concern:

about the many cases presented to [the Supreme] Court and the Court of Appeals in which a juror indicates doubt about his or her ability to function impartially, and is nevertheless continued on the panel ... In the typical case the trial judge or the [attorney] will ask questions until the juror gives assurance of efforts of impartiality.... Trial judges should fully sustain challenges to jurors who

indicate reservations about their impartiality. Replacement of jurors are easily available in the metropolitan areas, and it should not be difficult to ensure adequate supply of jurors in other parts of the state. *State v. Hopkins*, 687 S.W.2d 188, 191 (Mo. banc 1985).

Judge Welliver, dissenting, in *State v. Johnson*, 722 S.W.2d 62 (Mo. banc 1986), also stated that:

I keep wondering why trial judges continue to place us in the position of feeling an obligation ... to defer to their decision ... when they could so easily take all of us off the hook and remove even the slightest suspicion of unfair trial by simply calling another juror from the jury pool.

We find no abuse of discretion by the trial court in sustaining the challenges for cause of the four veniremen.

## VI

■ The fourth point raised by appellant is that the court erred in giving Instruction No. 7 withdrawing any evidence of visibility of the building from the highway due to a change of grade of the highway. Instruction No. 7 told the jury that:

The evidence of the visibility of the highway from U.S. 24 after the change of grade of the highway is withdrawn from the case and you are not to consider it in arriving at your determination of damages.[3]

Appellant contends that there was evidence that it purposely built its building on the back part of the property for business reasons and so that people could see it from the highway. Mr. Dye testified that "highway frontage is important to commercial property," and "visibility is very impor-

---

**3.** Offered by plaintiff and based on MAI 34.02. The court gave Instructions No. 6 and 8. Instruction No. 6, based on MAI 9.02 (1965), informed the jury that it must award defendant such sum as you believe was the "difference between the fair market value of defendant's whole property immediately before the taking on July 11, 1984, and the value of defendant's remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken."

Instruction No. 8, based on MAI 16.02 (1978), informed the jury that the phrase "fair market value" means the price which the property would bring when offered by sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so. "In determining fair market value you should taken [sic] into consideration all the uses to which the property may best be applied or for which it is best adapted, under existing conditions and such conditions to be reasonably expected in the near future."

tant because it is what you see that causes you to turn in and visit some commercial property." Mr. Dye testified that "they have lowered the highway a great deal right in front of Mr. Wells' property" and "it has damaged the access to the property, damaged the suitability to most—many commercial uses and reduced the visibility." An objection was overruled. He also explained that the factors, including unsightliness, aesthetic appearance and available parking, were taken into consideration in the evaluation. He said he did not "believe that the building has a value or the potential uses that it did prior to the taking" because "people are not going to be able to see the building. The building was built and situated on the land to have a picturesque view from the highway." The Commission objected to the evidence relating to the "loss of grade" and the court sustained the objection.

The issue to be resolved therefore is whether loss of visibility of a commercial enterprise due to loss of grade of a highway can be considered as compensable in a condemnation proceeding.

Appellant relies principally on *State ex rel Mo. Hwy. & Transp. v. Mosley*, 697 S.W.2d 247 (Mo.App.1985) and respondent relies principally on *Hill-Behan Lumber Co. v. State Highway Commission*, 347 Mo. 671, 148 S.W.2d 499 (1941) and *Kansas City v. Berkshire Lumber Company*, 393 S.W.2d 470 (Mo.1965). In *Berkshire*, property of the condemnee was appropriated in connection with the construction of a viaduct in Truman Road in Kansas City. Berkshire operated a lumber business until 1943 when the tract was leased to another lumber company. There were four buildings on the tract. One building had a sign prominently displayed which, prior to the construction, was visible to Truman Road traffic. As planned and constructed, the roadway became 12–32 feet above the

Berkshire tract. Witnesses for the condemnee testified as to damages and the reduction in value due to the viaduct which included the "change in visibility" of the property resulting from the construction. Change in traffic would amount to 90% of the transient business "because of poor visibility and accessibility." Other factors, including availability, advertising, value, and traffic trend were considered. The trial court gave three damage withdrawal instructions, two of which dealt with loss of access and "loss of view or visibility of their respective private property from members of the traveling public passing along ..." The issue to be determined was whether or not damages may be awarded for a "material decrease of direct access to and public view of an abutting retail business property caused by the condemnor's erection of an elevated viaduct." 393 S.W.2d at 473.

The Supreme Court, relying on a number of decisions,[4] held, *inter alia*, that since any claim as to damages for "public view" or visibility is "inextricably related" to a property right in the traffic, the decisions have consistently refused to "accord to property owners any right in the continuation of traffic." The Court said:

Respondent has never had a property right in the traffic, great or small, on the highway, nor a right to recover damages for a decrease in value of premises by reason of the diversion of traffic away from [the] property, ... 393 S.W.2d at 748.[5]

Furthermore, this court recently held in *State ex rel. Mo. High. Com'n v. Merkel*, 675 S.W.2d 467 (Mo.App.1984), that evidence of depreciation in value due to traffic diversion caused by change of grade was inadmissible.

Appellant relies on *Missouri State Park Board v. McDaniel, supra.* There the

---

4. *State ex rel. State Highway Commission v. Meier*, 388 S.W.2d 855 (Mo. banc 1965); *State ex rel. State Highway Commission v. Brockfeld*, 388 S.W.2d 862 (Mo. banc 1965).

5. The court recognized that there was a conflict in the cases, but the Supreme Court en banc rejected the approach taken by the Court of

Appeals in *Brockfeld, supra*, 388 S.W.2d 862 (Mo. banc 1965)—a right of access case; construction of Highway 70 in St. Louis. Traffic on public highways is controlled by the police power. What the police power may give an abutting owner, it can take away. *Berkshire, supra*, 393 S.W.2d at 473–474.

court held that admissibility of evidence of permitting the condemnee to adduce evidence of the proposed lease of state park land near the condemned tract for the purpose of constructing a multi-million dollar resort complex was not error, but refused to give a cautionary instruction. The case, however, did not involve visibility.[6]

Appellant places strong reliance on our recent decision of *State ex rel. Mo. Hwy. & Transp. v. Mosley*, 697 S.W.2d 247 (Mo. App.1985). This court held in that condemnation case that evidence relating to the diminution in value due to "loss of security and privacy" was compensable. We said:

> The interpretation of [the] language [in *Galeener*] in subsequent cases leads to the conclusion that such matters as noise, traffic, unsightliness, possible risk of explosion, inconvenience and, in this case, loss of security and privacy ... may be considered as factors which contribute to a diminution of market value. 697 S.W.2d at 248.

While *Mosley* stated that "where a partial taking is effected by condemnation, any element of damage which results in a diminution of fair market value of the remainder of the area is a fact which must be considered," the issue therein did not deal with loss of visibility, view or change of grade. Neither did *Mosley* cite or mention *Berkshire, Meier* or *Brockfeld*. We there dealt with a specific issue of privacy and security. *Mosley* did not contradict or change the views and holdings of *Berkshire* and other decisions.

*Mosley* is not controlling, and is distinguishable. *Mosley* did not deal with loss of visibility due to a change in grade of a public highway. *Mosley* did not "lump"

loss of visibility due to a change in grade with other elements such as noise and speed and possible risk of explosion. These elements relate to diminution in value without regard to the exercise of police power. Change of grade and loss of visibility is founded on the principle that the state may exercise its police power in changing the grade and, under the decisions of the Supreme Court, at least to date, an abutting owner has no property right to be visible by traffic.

We are therefore compelled to conclude, under the present case law, that the appellant's contention that it is entitled to compensation because of the change in grade in the highway and loss of visibility is without merit. Under the present state of the law as declared by the Supreme Court, which we are constitutionally bound to follow, loss of visibility of a commercial enterprise due to a change in grade is not an element of damages in a condemnation proceeding.[7]

This point is denied.

## VII

■ Finally, appellant contends that the court erred in overruling appellant's objection to certain testimony of the Commission's right of way appraiser, Glen Sloan, concerning an alleged statement of Mr. Wells that he preferred an access of a county road, rather than the highway, on the ground that such statements took place during settlement negotiations and hence was inadmissible.

We have examined the record and conclude that the evidence did not violate the rule proscribed in *State ex rel. State Highway Commission v. Sheets*, 483 S.W.2d

---

6. Other decisions relied upon by appellant are inapposite—*Graystone Heights Redev. Corp. v. Nicholas Inv. Co., Inc.*, 500 S.W.2d 292 (Mo.App. 1973)—evidence of underlain rock, extraction of which was not shown to be commercially feasible nor admissible; *State v. Galeener*, 402 S.W.2d 336 (Mo.1966)—noise, speed, increased traffic and resulting inconveniences to owners of abutting highway not compensable; *Behlman v. City of Florissant*, 548 S.W.2d 619 (Mo.App. 1977)—change in level of grade of street resulting in blocking surface water by municipality compensable.

7. This conclusion is in accord with recent decisions in other states: *Ark. State Highway Com'n v. Pearrow*, 12 Ark.App. 220, 674 S.W.2d 1 (1984); *Stockton v. Marengo*, 137 Cal.App. 760, 31 P.2d 467 (1934); *Jantz v. State Dept. of Transportation, Div. of Hwys.*, 63 Wis.2d 404, 217 N.W.2d 266 (1974)—excluding claims for loss of view, loss of income, and circuity of access due to change of grade; see S. Nichols, Eminent Domain, § 16.1013 (Third Ed.1984).

**470**

783 (Mo.App.1972). The testimony in this case did not primarily relate to negotiations as in *Sheets*. *Sheets* held that offers by landowners made to agents are not admissible and violate the rule relating to offers of compromise. That is not the situation here. While a bare offer of compromise of a disputed claim is not admissible, a statement forming a part of an offer or made in the course of negotiations is an admission of an independent fact and is admissible. *McKeown v. John Nooter Boiler Works Co.*, 237 S.W.2d 217 (Mo.App.1951). The trial court did not err.

### VIII

Having examined all of the points raised by appellant, Mini-Opry, we find no prejudicial or reversible error, and accordingly affirm the judgment. Rule 84.13(b).

The judgment is affirmed.

DOWD and CRIST, JJ., concur.